OPINION OF THE COURT
Ira Gammerman, J.
In this holdover action, petitioner landlord seeks to acquire possession of an apartment occupied by respondent tenant as a week-to-week tenant since September, 1974. Petitioner also seeks rent of $40 per week from March 1 to May 24, 1979.
Petitioner alleges, inter alia, that the premises occupied by respondent are not subject to rent control as a result of a vacancy occurring after June 30, 1971, and are not subject to rent stabilization or the Emergency Tenant Protection Act of 1974 ("ETPA”) (L 1974, ch 576, § 4) because the building in which the premises are located is a class "B” multiple dwelling. Respondent interposed an affirmative defense of retaliatory eviction and counterclaimed for a breach of the warranty of habitability. Respondent also moved to dismiss the petition, arguing first: that the ETPA applies to class "B” multiple dwellings and that respondent’s apartment therefore became rent stabilized by the passage of the ETPA; and second: that the building in which the premises are located is a de facto class "A” multiple dwelling (as a result of certain renovations made by the petitioner after he acquired title in 1974) and that the petition alleging class "B” multiple dwelling status is therefore jurisdictionally defective.
The matter was tried before a jury, which rendered a special verdict, finding for petitioner on the issue of retaliatory eviction and for respondent on the counterclaim alleging breach of the warranty of habitability. In connection with the latter finding, the jury allowed a partial rebate of rent and awarded respondent $400 in damages for "disruption of daily living.”
The issue of whether the petitioner’s building was a de facto class "A” multiple dwelling was not submitted to the jury, the *883 court determining that there was no question of fact for the jury to resolve, and that the building was, in fact, a class "A” multiple dwelling.
Following the verdict, petitioner moved to amend the petition to conform with that finding. He also moved to set aside the jury award of $400 for "disruption of daily living”, arguing that damages resulting from a breach of the warranty of habitability are limited to a partial or total rebate of rent.
The court initially denied petitioner’s motion to amend, but is now reversing that decision. The petition is, therefore, deemed amended to conform to the finding that the building is a de facto class "A” multiple dwelling. Respondent’s motion to amend his answer to allege a breach of the warranty of habitability as an affirmative defense as well as a counterclaim is also granted, although initially denied.
is respondent’s apartment covered by the etpa?
The first issue to be resolved, therefore, is whether respondent’s apartment became subject to rent stabilization as a result of the enactment of the ETPA of 1974. There is no dispute that at the time of the enactment of the statute, petitioner’s building was a class "B” multiple dwelling. As indicated above, respondent argues that class "B” multiple dwellings are covered by the ETPA of 1974. This argument flies directly in the face of La Guardia v Cavanaugh (NYLJ, Feb. 21, 1979, p 10, col 5) which holds that class "B” multiple dwellings are subject to neither rent stabilization nor the ETPA. Respondent maintains, however, that La Guardia was implicitly overruled by the Court of Appeals in Matter of Zeitlin v New York City Conciliation & Appeals Bd. (46 NY2d 992) which held that the language of section 3 of the ETPA and the city council resolution implementing that act in New York City are clear and unambiguous, and include any housing accommodation exempted from regulation under legislation establishing rent control or rent stabilization. Zeitlin is the basis for the holding urged by respondent here, as expressed in another matter decided by another Judge of this court (Houssein v Breen, L & T No. 42494/79 [Civ Ct of NY, NY County, May 4, 1979]), which holds that class "B” multiple dwellings are covered by the ETPA.
It is not necessary to resolve this issue in this matter, as another provision of the ETPA is dispositive of the question of whether respondent’s apartment is rent stabilized. In as much *884 as La Guardia (supra) is now before the Appellate Division for decision, it would be inappropriate for this court to express any views as to whether or not class "B” multiple dwellings are covered by the ETPA.
The facts proved at trial established that subsequent to January 1, 1974, petitioner renovated and rehabilitated all floors of his building except the one occupied by respondent. It was this renovation which changed the building from a rooming house containing 17 rooms (a class "B” multiple dwelling) to an apartment house containing six apartment units, occupied by petitioner and five tenants on a nontransitory basis (a class "A” multiple dwelling).
Subdivision (5) of section 5 of the ETPA exempts from its coverage "housing accommodations in buildings completed or buildings substantially rehabilitated as family units on or after January first, nineteen hundred seventy-four.” It is petitioner’s position that this section exempts the respondent’s apartment from coverage and that the apartment is neither rent controlled nor stabilized. Respondent argues that the exemption applies only to a housing accommodation substantially rehabilitated and since it is not disputed that respondent’s apartment was not so rehabilitated, the exemption does not apply.
The language of the statute is, however, clear. It is not the housing accommodation which has to be "substantially rehabilitated” to exempt it from coverage, but rather the building in which it is located. The court has been unable to find any case in which subdivision (5) of section 5 is interpreted, and the legislative history of the ETPA is of no assistance. The court must, therefore, conclude that the Legislature intended what the words of the statute clearly indicate that a housing accommodation in a building substantially rehabilitated after January 1, 1974 is not covered by the ETPA, even though the particular accommodation at issue itself was not rehabilitated.
This interpretation of the statutory language may give rise to a situation in which an apartment previously decontrolled may become covered by the ETPA only to lose that protection if the building in which it is located is substantially rehabilitated. If this was not what the Legislature intended when it enacted subdivision (5) of section 5, then appropriate remedial action should come from the Legislature, not the court.
*885 Respondent’s motion to dismiss on the basis of ETPA coverage is, therefore, denied.
IS THE PETITION JURISDICTIONALLY DEFECTIVE?
The second issue to be resolved is whether or not the petition is jurisdictionally defective because it alleges that the building in which respondent’s apartment is located is a class "B” multiple dwelling, when in fact the building is a class "A” multiple dwelling. The amendment of the petition to conform the allegation relating to the multiple dwelling status of petitioner’s building to the facts established at trial resolves this issue in favor of petitioner.
The petition alleges that respondent’s apartment is not subject to the ETPA because petitioner’s building is a class "B” multiple dwelling. If class "B” multiple dwellings were subject to the ETPA and the premises were not excluded from coverage by another section of that statute, the allegation that the premises were not covered by rent stabilization would render the petition fatally defective. It has already been concluded, however, that the premises are not covered by rent control or rent stabilization. The petition, therefore, correctly alleges that the apartment is free from control or regulation. The allegation that the premises are not stabilized because the building in which they are located is a class "B” multiple dwelling may or may not be accurate. It has, however, no bearing on the issue of rent stabilization in this matter.
EFFECT OF CLASS "a” STATUS ON THE RIGHT OF PETITIONER TO RECOVER RENT
Although the class "A” status of petitioner’s building does not affect the status of respondent’s apartment with respect to rent stabilization, it does affect petitioner’s right to institute a summary proceeding to recover rent.
Subdivision 1 of section 301 of the Multiple Dwelling Law provides: "§ 301. Certificate of compliance of occupancy. 1. No multiple dwelling shall be occupied in whole or in part until the issuance of a certificate by the department that said dwelling conforms in all respects to the requirements of this chapter, to the building code and rules and to all other applicable law, except that no such certificate shall be required in the case of:” (exceptions irrelevant to the instant proceedings).
*886 Subdivision 1 of section 302 of the Multiple Dwelling Law provides, in relevant part:
"a. If any dwelling or structure be occupied in whole or in part for human habitation in violation of section three hundred one, during such unlawful occupation * * *
"b. No rent shall be recovered by the owner of such premises for said period, and no action or special proceeding shall be maintained therefor, or for possession of said premises for non-payment of such rent.”
The proof here established that petitioners converted a class "B” multiple dwelling to a class "A” multiple dwelling after he acquired title to the building. There was no allegation in the petition nor was any proof offered that petitioner obtained a certificate of occupancy for a class "A” multiple dwelling. The failure to comply with section 301 of the Multiple Dwelling Law bars petitioner at this time from recovering rent in a summary proceeding (Multiple Dwelling Law, § 302, subd 1, par b). Thus, although as a result of the jury verdict he would be entitled to $384 ($40 per week for the period March 1 to May 24, 1979, less the rebate allowed by the jury), he is stayed from recovering that amount until a proper certificate of occupancy is obtained for the building. (Lipkis v Pikus, 96 Mise 2d 581.)
DAMAGES FOR BREACH OF WARRANTY OF HABITABILITY
The proof established that for two months, from April 4 to June 4, 1979, respondent’s apartment was without water or gas. Other conditions such as chipped and cracked walls and an improperly functioning and leaking toilet had existed for a much longer period of time. The failure on the part of petitioner to furnish gas and water, both essential services, required the respondent to take all his meals at restaurants, expending far more than the amount required for home preparation of meals. Without water, respondent could neither bathe nor wash. It was necessary for him, during this two-month period, to use the facilities of his friends and neighbors, and to keep large supplies of water in his apartment in order to flush his toilet. Water and gas were not restored to the apartment until ordered by the court in a housing preservation action, instituted by respondent.
The proof clearly established the disruption of the respondent’s daily living and the incurring of, for him, substantial *887 expense as a result of the breach of the warranty habitability. For all this, the jury awarded $400 in damages.
It is petitioner’s position that this award cannot stand because the respondent’s sole remedy for the breach is total or partial abatement of the rent sought by the petitioner. The court disagrees.
Petitioner’s position is supported by Cosmopolitan Assoc. v Ortega (90 Misc 2d 437). In Cosmopolitan, the tenant counterclaimed for damages for negligence (for which the landlord was insured) and for breach of the warranty of habitability (for which the landlord had no insurance coverage). A clause in the lease prohibited counterclaims of any kind. The court severed the counterclaim for negligence but permitted the cause of action based on breach of the warranty, reasoning that while a negligence counterclaim may validly be covenanted away, one based on breach of the warranty of habitability may not, pursuant to the explicit terms of section 235-b of the Real Property Law. However, the court limited recovery on that counterclaim to the rent demanded in the petition, so that the landlord not be answerable for damages otherwise covered by his insurance policy.
This court, however, finds it difficult to understand why insurance coverage, or the lack of it, should affect either the right to recover damages for breach of the warranty of habitability, or the amount of such damages. The right of the tenant to recover more than the rent demanded in the landlord’s petition has been clearly established (Stahl v AM & PM Prod., NYLJ, March 1, 1979, p 7, col 5). In the leading warranty of habitability case in this State (Park West Mgt. Corp. v Mitchell, 47 NY2d 316), the Court of Appeals acknowledged that a variety of remedies may be available to properly compensate the tenant’s loss resulting from the breach.*
Chief Judge Cooke, writing for a unanimous court, stated (p 329): "We do not comment upon the availability of other remedies [other than diminution in value] not implicated under the facts presented here.”
Even prior to the enactment of section 235-b of the Real Property Law the Appellate Division recognized an implied warranty of habitability (Tonetti v Penati, 48 AD2d 25, 29). *888 There, the court in acknowledging the warranty, employed a "parity of reasoning” with the language of Codling v Paglia (32 NY2d 330), which expanded the scope of products liability protection. This approach was explicitly adopted by the Court of Appeals in Park West (supra, p 324). "Since a lease is more akin to a purchase of shelter and services rather than a conveyance of an estate, the law of sales, with its implied warranty of fitness (Uniform Commercial Code, § 2-314) provides a ready analogy that is better suited than the outdated law of property to determine the respective obligations of landlord and tenant”. Damages for breach of warranty, other than, and in addition to, reduction in value, have long been allowed. (See Jones v Mayer, 16 Misc 586.) Breach of warranty has been regarded by the courts as a hybrid concept involving elements of both contract and tort (Greco v Kresge Co., 277 NY 26; Race v Krum, 222 NY 410). Breach of warranty is regarded as a wrongful act, and foreseeable, consequential damages (both general and special) may be recovered (Greco v Kresge Co., supra; Race v Krum, supra; Ryan v Progressive Grocery Stores, 255 NY 388).
The court can find no basis for making a distinction between breach of the warranty of habitability and breach of the warranties of fitness and merchantability which would limit damages to dimunition of value for one breach, while permitting consequential damages for the others.
There is a representation by both the landlord and the merchant that the health and safety of the tenant or consumer will not be endangered. Both the landlord and the merchant are in a position to have superior knowledge and both are better able to distribute any loss resulting from the breach.
The damages to which a tenant is entitled for disruption of daily living resulting from a breach of the warranty of habitability are no more difficult to assess than damages for pain and suffering in a personal injury claim. (See McFadden v Thompson-Starrett Co., 116 App Div 285, 286, affd 192 NY 550, damages stemming from interference with possession awarded for "loss of comfort”; Reed v New York & Richmond Gas Co., 93 App Div 453, 455, damages stemming from trespass awarded for insult, invasion of privacy, and "interference with comfort”; Dixie v New York Trap Rock Corp., 293 NY 509, 514, damages stemming from nuisance awarded for "discomfort” and inconvenience.) In any event, once the cause and *889 existence of damages has been established, recovery cannot be denied because of difficulty in ascertaining a monetary value for those damages (Park West Mgt. Corp. v Mitchell, 47 NY2d 316, 329, supra).
The record here more than adequately supports the $400 award made by the jury to compensate respondent for disruption of daily living resulting from petitioner’s breach of the warranty of habitability. Petitioner’s motion to set aside that jury award is denied.
JUDGMENT TO BE ENTERED
Petitioner is entitled to a final judgment of possession. Execution of that judgment is stayed until October 1, 1979.
The entry of a money judgment in the favor of petitioner in the amount of $384 (the amount demanded in the petition less the abatement allowed by the jury) is stayed until petitioner obtains a proper certificate of occupancy for his building.
Further, the clerk is directed to enter a judgment in favor of respondent and against petitioner for $400 plus interest of $5.40, calculated from the date of the jury verdict, June 18, 1979. No costs are awarded to either side.

 Indeed, Governor Carey explicitly noted in his memorandum accompanying the proposed section 235-b of the Real Property Law that remedies for breach of the warranty were to be fashioned by the courts, according to the facts of each case (NY Legis Ann, 1975, p 438).