OPINION OF THE COURT

Per Curiam.

Final judgment entered September 30, 1982, affirmed, with $25 costs.
The holdover petition was properly dismissed because the premises of respondent Holli Schwartz are subject to rent stabilization by virtue of the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4 [ETPA]). At the time respondent entered into possession in 1976, the building contained four class A and seven class B units; respondent occupied one of the class A units. Since that time, the premises have been altered to the extent that there are now seven class A units and no class B units. Upon the expiration of respondent’s renewed lease in May, 1980, *598 landlord did not offer a further renewal. Respondent continued in occupancy on a month-to-month basis at a rent increase which exceeded rent stabilization guidelines until landlord terminated the tenancy on 30 days’ notice on March 27, 1981.
Appellant’s principal contention is that respondent is not protected because the building was registered as a class B multiple dwelling at the time of the enactment of the ETPA and at the time respondent moved in. This overlooks the fact that when the ETPA was enacted, stabilization coverage was extended to “other housing accommodations made subject to this law pursuant to the emergency tenant protection act of nineteen seventy-four” (Administrative Code of City of New York, former § YY51-3.0, subd b). While the Court of Appeals ultimately concluded, in La Guardia v Cavanaugh (53 NY2d 67), that class B multiple dwellings were not encompassed within the phrase “other housing accommodations”, the Legislature almost immediately amended the Administrative Code to explicitly so state (L 1981, ch 675). Thus, the Rent Stabilization Law now expressly applies to “other housing accommodations in class A or class B multiple dwellings made subject to this law pursuant to the emergency tenant protection act of nineteen seventy-four” (Administrative Code, § YY51-3.0, subd b; emphasis added).
By the amendment, it seems clear that the Legislature was simply clarifying what it intended to effect in 1974 — namely, to extend protection to tenants of class B multiple dwellings. This is borne out by Senator Marchi’s supporting memorandum: “This bill amends Subdivision B of the New York City Administrative Code [§ YY51-3.0], to certify the inclusion of Class B multiple dwellings under the New York City Rent Stabilization Law. Residents of Class B multiple dwellings have been protected by the Emergency Tenant Protection Act since its enactment. As a result of LaGuardia v. Cavanaugh * * * these residents, 30,000 in all, will be subject to eviction. This amendment will prevent that.” (NY Legis Ann, 1981, pp 354-355; emphasis added.) It is our view, therefore, that the housing units in this building became subject to rent stabilization when the ETPA was enacted. Even if that were not the case, the rule *599 of Tegreh Realty Corp. v Joyce (88 AD2d 820) requires retroactive application of the 1981 amendment: “the speed with which the Legislature acted to undo the impact of La Guardia v Cavanaugh, and the immediate effectiveness of the statute are indicative of its intent to retroactively safeguard those tenants still in possession.”
Nor do we find any of the ETPA exceptions to coverage applicable. The building has at all relevant times contained at least six dwelling units. And it was not “completed or * * * substantially rehabilitated as family units on or after January first, nineteen hundred seventy-four” (see Emergency Tenant Protection Act of 1974, § 5, subd a, par [5]). Essentially the building was a residential premises before landlord undertook construction, the result of which was to consolidate some class B dwelling units into class A dwelling units.
Dudley, P. J., Sullivan and Sandifer, JJ., concur.