OPINION OF THE COURT
Charles E. Ramos, J.
In this nonpayment proceeding, the respondent tenant moves after trial to dismiss the petition on the ground that it fails to allege that the petitioners landlords are members of the Rent Stabilization Association. The petitioners assert that an allegation of membership in the Rent Stabilization Association is not required because the respondent’s apartment is not subject to rent stabilization by reason of (a) the substantial rehabilitation exemption provided by Emergency Tenant Protection Act § 5 (a) (5) (ETPA; L 1974, ch 576, § 4) and (b) by reason of the fact that the premises contain fewer than six dwelling units.
THE FACTUAL BACKGROUND
The petitioners purchased the premises in 1979 and converted it from its former status as a rooming house to its present status as a class A apartment house renovating and rehabilitating all floors. At the conclusion of this rehabilitation the premises were *235 altered from a 17-unit class B rooming house to a 5-unit class A apartment house, occupied by the petitioners and their tenants.
The petitioners invested $110,000 to purchase the premises and expended $150,000 in the rehabilitation. The rehabilitation not only resulted in the conversion of the original 13 class B rooms and 4 class A apartments into 5 rehabilitated class A apartments (as revealed by a comparison of the original and current certificates of occupancy) but also in the repair and/or replacement of many of the building’s major systems and components.
Included in the work was repair or replacement of floors, walls, windows, plumbing, roofs, electrical wiring, intercom, fixtures, doors and appliances. New rooms were created, existing rooms destroyed, layouts were changed and classification of units upgraded from B to A as aforesaid.
Each floor of the building received a share of the rehabilitation, and all floors enjoyed the bénefits of the improvements to the common areas.
APPLICABLE LAW & REGULATION
ETPA provides that a class A multiple dwelling containing six or more class A units is subject to rent stabilization. ETPA § 5 (a) (5) also provides for an exemption for “housing accommodations in buildings *** substantially rehabilitated as family units on or after January [1, 1974]”.
The term “substantial rehabilitation” is not defined in the ETPA.
The term has been the subject of some case law, notably Goodman v Ramirez (100 Misc 2d 881); Hickey v Bomark Fabrics (111 Misc 2d 812, affd 120 Misc 2d 597) and Matter of Romanow v Heller (121 Misc 2d 886).
In Goodman (supra), a case with a virtually identical factual situation to the matter on trial, the landlord rehabilitated a 17-unit rooming house, converting it from a class B to a class A multiple dwelling. The owner’s contention that the subject apartment was exempt from rent stabilization was sustained, even though it received no rehabilitation at all. The building-wide rehabilitation was sufficient to remove all apartments from stabilization.
In Hickey (supra), a very different standard was applied to somewhat similar facts. The owner “remodeled” 7 of the building’s 11 units into 3 class A units. The Appellate Term in affirming the trial court stated that the remodeling of the seven units was merely a consolidation of some B units into A units *236 which did not constitute a substantial rehabilitation. (See, Hickey v Bomark Fabrics, 120 Misc 2d 597, 599 [App Term], supra.)
Not considered by the Appellate Term, but relied upon by the respondent here was the interpretation of ETPA § 5 (a) (5) by the trial court in Hickey (111 Misc 2d 812, 815, supra), which stated that the “rehabilitation [must] result in the creation of new family units * * * an increase in the number of residential [family] units.” The trial court in Hickey (111 Misc 2d 812, 816-817, supra) had further held that' “[a]bsent unusual circumstances * * * a rehabilitation which does not at least double the number of family units in the building cannot be deemed a substantial rehabilitation of the building within the meaning of section 5 (subd a, par [5]) of the ETPA.”
In Romanow (supra), the basis for the alleged exemption from rent stabilization was a rehabilitation that occurred some 10 years prior to the attempt by the landlord to invoke the substantial rehabilitation exemption.
The court in Romanow (supra) undertook an attempt to define substantial rehabilitation, citing as authority both Goodman v Ramirez (supra) and Hickey v Bomark Fabrics (supra), but without reconciling the contradictory holdings in those cases. Contrary to Goodman and leaning toward Hickey, Romanow held that some new family units should be added to the housing stock, and ruled that there was no substantial rehabilitation, but it is evident that there was retreat from the standard of Hickey that the rehabilitation must double the number of units.
ANALYSIS
It is apparent from a reading of the applicable statutes and the cases discussed above that there is a trend in the most recent cases to amend the ETPA by judicial fiat. In Hickey (supra), the court required that a substantial rehabilitation must double the number of housing units. In Romanow (supra), the court sought to justify its holding that some additions be made to the housing stock by construing the exemption “in light of the remedial purposes of the ETPA and the statutory scheme of the Rent Stabilization Law”. (Matter of Romanow v Heller, 121 Misc 2d 886, 889, supra.)
This court will not apply the standards of Hickey and Romanow (supra) for two reasons. The first is that such statutory interpretation is unnecessary when the statute is clear and unambiguous. In this case the statute is clear and unambiguous. (See, Goodman v Ramirez, supra, p 884.) The second reason is *237 that if statutory interpretation is necessary, then it should be done in the light of the intent of the specific statute itself, and not of the intent of other laws dealing with a similar subject matter.
The term “substantial rehabilitation”, although not defined in the statute, is not a term which may be defined without regard to the customary and accepted meaning of the words themselves.
“Rehabilitation” is defined in Webster’s Third New International Dictionary Unabridged as “to put into a previous good state again: to restore”.
“Substantial” is therein defined as “not seeming or imaginary: not illusive: real: true * * * having good substance * * * strong: stout: solid”.
Neither term alone or in combination remotely suggests any increase in quantity or capacity, as both Hickey and Romanow (supra) hold. Rather, the terms suggest quality, a true or significant restoration of a former good quality.
Within the context of poor or substandard housing, such as the premises here prior to the rehabilitation, substantial rehabilitation refers to improving the quality of the housing stock, not increasing the quantity.
It should also be noted that any effort to increase the number of housing units would have required the subdivision of rooming house units into even smaller rooms which would further diminish the quality of the housing units. Such a result would be contrary to both the letter and spirit of the term “substantial rehabilitation”.
The intent of the Legislature in enacting the exemption was to encourage rehabilitation of substandard housing units or underutilized buildings. The Legislature has provided for a number of inducements to encourage investment in housing, including real estate tax abatements and exemptions as well as the exemptions from rent controls, such as ETPA § 5 (a) (5), which will, it is hoped, result in an increase in the number of affordable, decent housing units.
If the Legislature wishes to discourage rehabilitation or wishes to encourage rehabilitation only when new housing units are created, the legislation must so specify. A limitation of the character of the holding in Hickey (supra) must be provided by the Legislature. It is not for this court to legislate.
The statute clearly does not limit the exemption to instances where new housing units are added to the city’s housing stock. Therefore, this court must determine when the rehabilitation is *238 looked at as a whole, if in light of the size, prior condition and prior use of the building, the rehabilitation was “substantial”.
WAS THE REHABILITATION “SUBSTANTIAL”?
There are a number of objective criteria that can be applied to determine if a rehabilitation was substantial.
A comparison of the certificates of occupancy before and after the rehabilitation provides the most objective criteria. Such a comparison will show if there has been a change in status or use from B rooms to A apartment units, or from commercial to residential, and will also show if there has been a change in the number of units.
In this proceeding, a comparison of certificates of occupancy reveals that what was formerly a class B rooming house is now a class A apartment house. It also shows a change from 17 units to 5.
The next logical criteria would be an analysis of the scope of work actually done at the building. The work should not be merely cosmetic, such as paint and plaster, but should result in extensive repair or replacement of some of the major systems in the building.
As has been pointed out above, at these premises plumbing, heating, electrical, intercom, and windows were only some of the systems included in the scope of the work.
In addition to major systems, the removal and creation of partitions, and the addition of new kitchens and baths are also relevant in making the determination of “substantiality”. This work was also included in this rehabilitation.
Another criteria is cost. Standing alone cost would not be a determining factor, but when compared to the cost of acquisition (if recent), and the size and condition of the building, the level of expenditure can be helpful in making a determination.
In this rehabilitation the petitioners expended approximately $150,000, which was 135% of the recent purchase price and approximately $30,000 per apartment unit. Both the percentage and the cost per unit are not insubstantial in this case.
Considering the above criteria, it is clear that the premises did enjoy a substantial rehabilitation and that the respondent’s apartment is therefore exempt from rent stabilization. The court will therefore not discuss the issue of whether the reduction in the number of units could exempt the premises from rent stabilization. The respondent’s motion to dismiss is accordingly denied.
*239 DAMAGES FOR BREACH OF WARRANTY OF HABITABILITY
The undisputed evidence established that the respondent’s apartment suffered from a lack of heat during the winter of 1983-1984. The problem was most acute in a storage room that the respondent converted into his bedroom.
The petitioners testified, without contradiction, that they sought to increase radiator capacity in the respondent’s apartment during the summer months but that the respondent refused to have the work done, stating that he did not believe that the addition of greater capacity radiation would cure the problem.
The parties agreed that if the respondent heated his space with electric heaters, petitioners v^ould pay his “excess” utility bills.
As the winter progressed, it became apparent that the problem could not be remedied by the use of electric heaters, but by that time, the respondent had become uncooperative, his typical response to any request for access being “talk to my lawyer”.
The evidence also revealed that the respondent had intended, from the outset, to use the apartment for both business and residential purposes. In fact, the apartment is the location for the conduct of respondent’s business where he and his employees maintain their offices and where the respondent conducts seminars and group meetings.
The parties did agree on a partial abatement which will be incorporated into the judgment to be entered herein. The tenant is granted an abatement of $1,173 for the inadequate heat experienced in his apartment for the winter of 1983-1984, to which shall be added the sum of $193 to compensate the tenant for his “excess” utility bills.
It should be noted that the continued refusal of the respondent to permit installation of increased radiation will foreclose any abatement in the future.
The respondent also asserted claims of an incomplete second bath and needed electrical repair. These items do not rise to the status of a breach of the warranty of habitability, and as to the more serious of the two (the incomplete second bath), there is ample evidence that the parties had agreed on a program for cure which the respondent frustrated, the petitioners having purchased all material required for the work to be done.
Accordingly, judgment for the petitioners as follows: (a) Petition is amended to include rent through July 31,1984; (b) final *240 judgment of possession, five-day stay of execution of the warrant; (c) a money judgment to be entered in favor of the petitioner in the amount of $10,184 ($1,650 per month less the abatement for lack of heat and excess electrical); and (d) costs and disbursements, as taxed by the clerk of this court.