■ In the Matter of EASTERN PORK PRODUCTS COMPANY, Appellant, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL et al., Respondents.—Judgment, denominated an order, Supreme Court, New York County (Phyllis Gangel-Jacob, J.), entered April 15, 1991, which denied petitioner's CPLR article 78 petition to annul a final order of the respondent New York State Division of Housing and Community Renewal (DHCR) finding that the subject building was not substantially rehabilitated pursuant to section 5 (a) (5) of the Emergency Tenant Protection Act of 1974, unanimously reversed, on the law, without costs, and the matter is remanded to the District Rent Administrator for a de novo factual determination as to the scope of the rehabilitation.

The building in question, a brownstone containing three floors and a basement level, is owned by the petitioner-appellant Eastern Pork Products Company. Respondents-respondents Richard and Rosalind Baronio have been the tenants of Apt. 3 on the top floor of the building since March 1, 1983. On

June 17, 1987, the Baronios filed a complaint with DHCR alleging that the building is rent-stabilized, and that the owner had collected a rent overcharge for their apartment. The owner answered the complaint by stating that the building was exempt from stabilization because it had fewer than six units, and because "[t]he apartments were constructed after 1974", thus apparently invoking section 5 (a) (5) of the Emergency Tenant Protection Act of 1974 ([ETPA] L 1974, ch 576, § 4; McKinney's Uncons Laws of NY § 8625 [a] [5]), which exempts from rent stabilization "housing accommodations in buildings completed or buildings substantially rehabilitated as family units on or after January first, nineteen hundred seventy-four."

On December 11, 1987, the District Rent Administrator (DRA) issued an order dismissing the Baronios' rent overcharge complaint solely on the ground that the building contained less than six housing accommodations. The DRA did not address the issue of substantial rehabilitation of the building.

On January 14, 1988, the Baronios filed a petition for Administrative Review (PAR) with DHCR, refiled on March 4, 1988 because of a defect in the original filing, seeking revocation of the December 11, 1987 order. The owner's answer, as here pertinent (the issue of the number of dwelling units in the building having been removed from this appeal), reasserted that the building had been substantially rehabilitated as family units after January 1, 1974, and was therefore exempt from stabilization pursuant to ETPA § 5 (a) (5) and Rent Stabilization Code (9 NYCRR) § 2520.11 (e). The owner submitted in support of its position an Altered Building Application, a construction cost analysis relating to the alleged rehabilitation, a $72,000 invoice relating to a portion of the work, and floor plans which had been filed with the Department of Buildings. The owner asserted that at the time of the rehabilitation of the building in 1982-1983, it contained a total of 12 vacant Class B rooms on the first, second and third floors, and one occupied Class A apartment on the basement level. The pre-existing rooms on the first, second and third floors were allegedly removed, and new units were constructed consisting of "single floor through suites" containing two Class B rooms on each floor. Existing partitions were removed, and the configurations of the apartments were altered. New electrical feeders, a new ventilation system and new baseboard heating were installed. The rehabilitation, which cost $108,385, also included unspecified work on the kitchens,

vanities, stoves and refrigerators, relocation of sprinklers and a new water heater.

On April 20, 1990, the DHCR issued an order granting the Baronios' PAR, and reversed the DRA's finding of exemption, concluding, as here pertinent, that the building did not qualify under the ETPA § 5 (a) (5) exemption for buildings substantially rehabilitated as family units on or after January 1, 1974. Although the Deputy Commissioner did not dispute the nature, extent or cost of the work done on the building, except to observe that "the floors, ceilings and walls remained in place throughout the renovation", he reasoned that for the exemption to apply, it was required that (1) every apartment in the building had to be rehabilitated (the basement apartment was not); (2) the building must have been totally vacant during the rehabilitation (the basement apartment was not); and (3) the entire interior of the building had to have been "gutted".

The owner brought an article 78 proceeding seeking to annul the DHCR order on grounds that it was arbitrary and lacking a rational basis, in that the DHCR failed to apply the correct standard for determining whether the building had been substantially rehabilitated. The DHCR, which had previously assumed the truth of the owner's submissions regarding the extent of the renovations, claimed for the first time that the extent of the work done on the building was less than that claimed by the owner, and that the owner's documentation of the work done was inadequate. The IAS Court adopted DHCR's new arguments in confirming the order and dismissing the petition, and thus violated "the settled rule that judicial review of an administrative determination is limited to the grounds invoked by the agency" (Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753, 758). The Court of Appeals further elaborated that " ' "[a] reviewing court, in dealing with a determination * * * which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis" ' " (supra, at 758). The IAS Court erred in failing to address the correctness of the standards adopted by DHCR in determining whether the owner's renovations constituted a substantial rehabilitation of the building, to wit, that every apartment in the building had to be substantially rehabilitated, that the building had to be totally vacant dur-

ing the rehabilitation, and that the rehabilitation must have included a "gutting" of all interior elements of the building.

The correctness of DHCR's interpretation of the statute must be considered in the light of the following principles set forth in *Kurcsics v Merchants Mut. Ins. Co.* (49 NY2d 451, 459): "Where the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, the courts regularly defer to the governmental agency charged with the responsibility for administration of the statute. If its interpretation is not irrational or unreasonable, it will be upheld. *(Matter of Howard v Wyman,* 28 NY2d 434; cf. *Ostrer v Schenck,* 41 NY2d 782, 786.) Where, however, the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much less weight. And, of course, if the regulation runs counter to the clear wording of a statutory provision, it should not be accorded any weight. (See *Matter of Adams [Government Employees Ins. Co.],* 52 AD2d 118, 121.)" *(See also, Matter of Action Elec. Contrs. Co. v Goldin,* 64 NY2d 213, 221; *but cf., Matter of Salvati v Eimicke,* 72 NY2d 784, 791.)

"Ultimately * * * legal interpretation is the court's responsibility; it cannot be delegated to the agency charged with the statute's enforcement." *(Matter of Moran Towing & Transp. Co. v New York State Tax Commn.,* 72 NY2d 166, 173.)

The words "substantially rehabilitated" in ETPA § 5 (a) (5) are not technical terms, but are rather general, commonly used terms which may not be limited by judicial or administrative construction, and should be accorded their commonly understood meaning *(Matter of Murawski,* 84 AD2d 496, 498; McKinney's Cons Laws of NY, Book 1, Statutes § 94). Reference to definitions contained in Webster's Third New International Dictionary Unabridged generally suggests "a true or significant restoration of a former good quality" to the subject building *(Nelson v Yates,* 127 Misc 2d 234, 237). If the Legislature had intended to require "the gutting of the entire interior of the building" while all apartments and rooms are vacant in order for the exception to apply, as DHCR ruled in its April 20, 1990 determination of the PAR, the Legislature could easily have so specified *(see, Pape v Doar,* 160 AD2d 213, 215; *Matter of Board of Educ. v State Div. of Human Rights,* 38 AD2d 245, 248, *affd* 33 NY2d 946).

We note that in *Goodman v Ramirez* (100 Misc 2d 881), the owner's contention that the subject apartment was exempt from rent stabilization under ETPA § 5 (a) (5) was sustained even though the apartment itself was not rehabilitated. The building-wide rehabilitation was held sufficient to remove all apartments from stabilization. Although that decision was rendered in 1979, and explicitly invited remedial action from the Legislature if that result was not what the Legislature intended, no amendment has since been enacted, although we recognize that such inaction is far from conclusive as to the Legislature's intent. We cite *Goodman* only as some support for the proposition that a building need not be completely vacant at the time of the renovation in order to qualify for the exemption *(see also, Baxter v Captain Crow Mgt.,* 128 Misc 2d 254). In the case at bar, the basement Class A apartment, which was the only apartment occupied during the renovation, is rent controlled, and is not the apartment occupied by the Baronios. Thus we do not address the question whether a particular rent-stabilized apartment which is occupied while substantial rehabilitation of the remainder of building is undertaken, would lose its rent-stabilized status under the statutory exemption.

While in *Pape v Doar* (160 AD2d 213, *supra),* we criticized lower court decisions which had interpreted ETPA § 5 (a) (5) as requiring that the renovation increase the number of residential units in the subject building *(e.g., Hickey v Bomark Fabrics,* 111 Misc 2d 812, *later appeal* 120 Misc 2d 597; *Matter of Romanow v Heller,* 121 Misc 2d 886, *affd* 134 Misc 2d 606), the basic purpose of the exemption is to increase the number of habitable family units available to the residents of our city. The mechanism by which this is accomplished is to encourage building owners to substantially rehabilitate commercial, or substandard or deteriorated housing stock by permitting them to recoup their expenses free of stabilized rents *(supra).* Hypothetically, under the construction urged by DHCR, the owner of a building containing 99 substandard and deteriorated vacant housing units, and just one occupied unit that required no rehabilitation, would not be able to recoup the cost of rehabilitating the 99 units unless he evicted the tenant in occupancy, and gutted the entire building, including the unit that required no rehabilitation. Clearly, that result would be unreasonable, and contrary to the intendment of statute.

We therefore conclude that the DHCR, in requiring that the owner's renovations must have constituted "gutting" of an entire, vacant building in order to qualify for the ETPA § 5 (a)

(5) exemption, employed overly rigid standards which are inconsistent with the intent and language of the statute, and unreasonable. Inasmuch as the facts relevant to the owner's claim of substantial rehabilitation of the building were never adequately presented to the DRA for evaluation, this matter should be remanded to the agency for a hearing de novo. Concur—Sullivan, J. P., Carro, Asch and Rubin, JJ.