*685 OPINION OF THE COURT
Louis B. York, J.
Plaintiffs Cristina Nunez (Nunez), Rose Voci (Voci) and Mary Sultan (Sultan) — individually and on behalf of a class of similarly situated persons — challenge various aspects of the Senior Citizen Rent Increase Exemption program (SCRIE). Before the court are a motion for summary judgment by plaintiffs and a cross motion for summary judgment by defendants. The assertions and relief requested by the parties are set forth in detail below.
Background
In 1974, pursuant to RPTL 467-b, the New York City Council enacted a statute to provide rent increase exemptions for low-income senior citizens residing in New York City rent-stabilized housing. This statute was amended many times and is currently codified at section 26-509 of the Administrative Code of the City of New York (the SCRIE Statute). Under the SCRIE Statute, an eligible head of household who does not receive a monthly social services stipend for shelter is exempted from paying rent increases. A landlord may only charge an eligible tenant the greater of one third of the aggregate disposable income of his or her household or the "rent in effect immediately preceding the eligibility date.” (Administrative Code § 26-509 [b] [3] [i].) According to the affidavit of Barrington White, the SCRIE program’s current director, the agencies who have administered SCRIE have defined "eligibility date” to mean "the date prior to the effective date of the latest lease for the dwelling unit in which the applicant resides.” (Affidavit of Barrington Wright, Nov. 10, 1994, at 6.)
Under the portion of the SCRIE Statute relevant to this action, a tenant is eligible for a SCRIE if (1) the head of household is at least 62 years old and is entitled to the possession, use or occupancy of the dwelling unit; (2) the after-tax aggregate disposable income of all household members does not exceed $16,500 per year;[1] and (3) the maximum rent for the housing accommodation exceeds one third of the household’s aggregate disposable income. (Administrative Code § 26-509 [b] [2].) An eligible tenant must apply to the New York City Department for the Aging (DFTA), the agency currently responsible for administrating the SCRIE program, for a SCRIE order which takes effect on the first day of the first month after receipt of *686 the tenant’s application. The landlord is bound by the terms of the SCRIE order until it expires. In return, the landlord receives a tax abatement from the City. (See, Administrative Code § 26-405 [m]; § 26-409; see also, Kraebel v New York City Dept. of Hous. Preservation & Dev., 959 F2d 395, 405-406 [2d Cir 1992] [discussing the mechanics of the tax abatement procedure], cert denied 506 US 916 [1992].)
Plaintiffs Nunez and Sultan claim to have been eligible under SCRIE when they attained 62 years of age; because plaintiff Voci moved into her current apartment when she was 62 years old, she did not become eligible until November 30, 1989, when her first lease expired. Because they were unaware of the SCRIE Statute, however, they did not immediately attempt to obtain SCRIE orders. Nunez applied for a SCRIE in August 1988, at the age of 64; Voci applied in April 1993, over three years after her first lease expired; and Sultan applied in April 1991, shortly before her 67th birthday. Between the time they became eligible for the rent increase exemption and the time they applied for SCRIE orders, plaintiffs all entered into renewal leases, which included rent increases. Thus, though plaintiffs now receive rent increase exemptions pursuant to the SCRIE program, they pay more rent than they would be paying if they had applied for, and received, SCRIE orders when they first became eligible.
In addition to challenging the SCRIE Statute on their own behalf, plaintiffs represent the class of "others similarly situated.” The First Department has defined this class as "[a]ll senior citizens residing in rent-stabilized apartments within the City of New York who presently are eligible, or in the future will be eligible, to receive a [SCRIE order] and who because they applied, or will apply, for benefits after the date they first met the SCRIE eligibility criteria, received, or will receive, a smaller * * * benefit than they would have received if their SCRIE application [sic] had been filed on the date they first met the SCRIE eligibility criteria” (Tindell v Koch, 164 AD2d 689, 698 [1st Dept 1991]).
Second Amended Complaint
Plaintiffs’ second amended complaint alleges six causes of action. All are brought by the named plaintiffs; only the third cause of action is asserted on behalf of both the named *687 plaintiffs and the plaintiff class.[2] Among other things, plaintiffs claim that: (1) Prema Mathai-Davis (Mathai-Davis), Commissioner of DFTA, and Felice Michetti (Michetti), Commissioner of the New York City Department of Housing Preservation and Development (HPD), arbitrarily, capriciously and in abuse of discretion failed to issue rent-exemption orders to Nunez, Voci and Sultan based upon the dates they first became eligible for SCRIE orders; (2) by calculating plaintiffs’ rents based on plaintiffs’ application dates, Mathai-Davis and Michetti failed to perform their duties in accordance with the law; and (3) by using these methods to calculate plaintiffs’ rents for the SCRIE orders, defendants have violated RPTL 467-b, Administrative Code § 26-509 and 9 NYCRR 2202.20. Plaintiffs currently move for summary judgment on these and all other causes of action.
Administrative Code of the City of New York § 26-509: Eligibility Date
The parties’ major dispute concerning the interpretation of the SCRIE Statute centers around the meaning of the term "eligibility date”. As stated earlier, the rent of an applicant deemed eligible for a SCRIE is frozen at the greater of (1) one third of the aggregate disposable income of the applicant’s household or (2) the "rent in effect immediately preceding the eligibility date”. (Administrative Code § 26-509 [b] [3] [i].) Plaintiffs contend that "eligibility date” must be read as the words plainly mean: the first date upon which an applicant became eligible for a SCRIE, regardless of the date of actual application. If the statute is read this way, defendants have violated their duties under the law by not freezing the tenants’ rents as of the dates they first satisfied the eligibility requirements for a SCRIE. On this basis, plaintiffs ask this court to declare defendants’ policy arbitrary and capricious and to grant summary judgment on its first, second and third causes of action.
Defendants argue that the rules and regulations of those agencies responsible for administering programs such as SCRIE are entitled to great deference, and therefore this court *688 should accept their interpretation of the SCRIE Statute. Defendants further contend that the language of Administrative Code § 26-509 is ambiguous, and therefore they are acting within their statutory authority in thus interpreting the phrase "eligibility date.” Finally, they state that their interpretation is consistent with that of the Conciliation and Appeals Board (CAB) and HPD — the prior administrators of the SCRIE program — and that this lends additional support to their reading of the statute.
In part, defendants are correct; an administrative rule or regulation is entitled to great deference and should be upheld so long as it is reasonable and has a "rational basis”. (New York State Assn. of Counties v Axelrod, 78 NY2d 159,166 [1991] [citations omitted].) However, courts do not review administrative rules "pro forma in a vacuum, but * * * scrutinize[ ] [them] for * * * reasonableness and rationality in the specific context”. (Supra.) "[I]f the regulation runs counter to the clear wording of a statutory provision, it should not be accorded any weight.” (Matter of Eastern Pork Prods. Co. v New York State Div. of Hous. & Community Renewal, 187 AD2d 320, 323 [1st Dept 1992] [citations omitted].) When a court has found that an agency rule is inconsistent with the mandates of a statute, it has declared the rule irrational and void. (E.g., Matter of Society of N. Y. Hosp. v Axelrod, 70 NY2d 467 [1987]; Matter of Eastern Pork Prods. Co. v New York State Div. of Hous. & Community Renewal, 187 AD2d 320, supra.) Therefore, it is proper to evaluate defendants’ rule to ensure that it complies with the mandates of the Administrative Code.
"WTiere the terms of a statute are clear and unambiguous, 'the court should construe it so as to give effect to the plain meaning of the words used.’ ” (Matter of Auerbach v Board of Educ., 86 NY2d 198, 204 [1995], quoting Patrolmen’s Benevolent Assn. v City of New York, 41 NY2d 205, 208 [1976].) Thus, a court should ascribe to the words used their "ordinary and usual meaning” unless the statute or ordinance clearly indicates that the words should be given a different meaning. (McKinney’s Cons Laws of NY, Book 1, Statutes § 232.) To determine the plain meaning of a word, courts often consider the dictionary definitions of the word. (See, e.g., Matter of New York State Clinical Lab. Assn. v Kaladjian, 85 NY2d 346, 353-354 [1995], quoting Pierce v Underwood, 487 US 552, 564 [1988]; Matter of Duell v Condon, 84 NY2d 773, 780 [1995]; see also, McKinney’s Cons Laws of NY, Book 1, Statutes § 234 [where term is not defined in statute, dictionary meanings are useful guideposts].)
*689 As plaintiffs contend, the Administrative Code is clear on its face. The common meaning of the word "eligible” is "fit and proper to be chosen” or "meeting the stipulated requirements.” (See, e.g., Black’s Law Dictionary 521 [6th ed 1990]; Random House Dictionary of the English Language 632 [2d ed unabridged 1987].) There is nothing in the SCRIE Statute that indicates that the word is to be given any other meaning; therefore, this definition should be used. (See, Matter of Duell v Condon, 84 NY2d, supra, at 780.) A tenant’s "eligibility date”, then, is the date on which the tenant first met the stipulated requirements for a SCRIE.
Both parties have submitted extensive arguments regarding the legislative history of the SCRIE Statute to support their positions. However, only "where the language is ambiguous or where a literal construction would lead to absurd or unreasonable consequences that are contrary to the purpose of the enactment” is it proper for the court to evaluate legislative history to determine the meaning of a statute. (Matter of Auerbach v Board of Educ., 86 NY2d, supra, at 204; see also, Finger Lakes Racing Assn. v New York State Racing & Wagering Bd., 45 NY2d 471, 480 [1978] ["If * * * the terms of a statute are plain * * * there is nothing left for interpretation”].) As the language of the statute is unambiguous, the court’s inquiry is limited to determining whether a literal interpretation of the phrase "eligibility date” would lead to a result inconsistent with the purposes of the SCRIE Statute. (See, McKinney’s Cons Laws of NY, Book 1, Statutes § 232.)
The intention of the Legislature in promulgating Administrative Code § 26-509 is embodied in RPTL 467-b, the enabling statute for municipalities to pass laws concerning tax abatement for rent-controlled and rent-regulated property occupied by senior citizens. The enabling statute states that: "[t]he governing body of any municipal corporation is hereby authorized and empowered to adopt * * * a local law, ordinance or resolution providing for the abatement of taxes * * * imposed on real property containing a dwelling unit * * * (a) where the head of the household does not receive a monthly allowance for shelter pursuant to the social services law, an amount not in excess of that portion of any increase in maximum rent or legal regulated rent which causes such maximum rent or legal regulated rent to exceed one-third of the combined income of all members of the household” (RPTL 467-b [2]). The legislation was designed to lessen the harsh impact of rental obligations on low-income senior citizens by freezing their monthly *690 rents at one third of their income, thus leaving their limited incomes available for other necessities, such as food, clothing, and medicine. (Matter of Coccaro v Stupp, 166 Misc 2d 948 [Sup Ct, NY County].) Although it does not explicitly acknowledge the difficulties of city life for low-income senior citizens, the enabling statute’s purpose is clear, and is consistent with the plain meaning of the phrase "eligibility date”.
The findings of the New York City Council, summarized in Administrative Code § 26-405 (m), bolster this conclusion.[3] The Council discussed the acute and continuing housing shortage and the concurrent continuing increase in rents, and stated that rent increase exemptions protect low-income senior citizens who might not be able to pay these high and increasing rates. Although the statement does not appear in the rent-stabilized SCRIE Statute, Administrative Code § 26-405 (m) was originally enacted by Local Laws, 1974, No. 51 of the City of New York, the same vehicle used by the Legislature to amend the rent control SCRIE Statute.
In addition, defendants rely on an earlier version of the SC-RIE Statute (SCRIE I), which, in section YY51-4.1, contained a definition of the term "eligibility date”. There, the phrase was defined as "the later of (1) June thirty, nineteen hundred seventy-four or (2) the last day of the month in which such person became an eligible head of household in the dwelling unit in which such person resides at the time of filing the most recent application for benefits thereunder.” When the Administrative Code was recodified in 1986, as section YY51-4.1.1 (SCRIE II),[4] the Legislature omitted the definitions section. Defendants suggest that this omission — particularly when considered along with other changes to the SCRIE Statute— supports its interpretation of the phrase "eligibility date”.
I agree with plaintiffs that the definition contained in SCRIE I is consistent with their interpretation of the statute. Unless a Legislature amends a statute "to alter the existing rules on the subject we assume it intended no change”. (Heller v U. S. Suzuki Motors, 64 NY2d 407, 411 [1985].) Here, the legislative *691 history contains no discussion of the deletion of the definitions section from SCRIE II. Thus, there is no reason to assume that the Legislature intended the term "eligibility date”, defined in SCRIE I, and not defined but contained in SCRIE II, to have a different meaning in the recodified statute. (Cf., McKinney’s Cons Laws of NY, Book 1, Statutes § 222 [even change in phraseology in revised statute will not alter prior law unless revised statute indicates this intention].) Furthermore, there is no reason to assume that the Legislature intended "eligibility date” to acquire something other than its commonly understood meaning through this omission.
Next, defendants argue that the court must defer to the interpretation of the SCRIE Statute allegedly followed by each implementing agency since the inception of SCRIE. If the Legislature were dissatisfied with this interpretation, defendants state, then it would have amended RPTL 467-b to make its intent clearer. It is up to the City Council, not the judiciary, to depart from this interpretation of the statute by amending the law. In addition, defendants warn of the administrative and fiscal burdens that the City will incur if the court adheres to plaintiffs’ definition of "eligibility date”.
The court rejects defendants’ contentions. Although the fiscal burdens of the City are of tremendous concern, it is for the Legislature, not the judiciary, to determine how to contain this burden while accommodating the needs of low-income seniors. It is the judiciary’s role, on the other hand, to ensure that the local administrators of the SCRIE program carry out their duties in accordance with the mandates of the statute. (See, Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, 62 NY2d 539, 545 [1984].) In freezing a SCRIE tenant’s rent at "the date prior to the effective date of the latest lease for the dwelling unit in which the applicant resides”, defendants have ignored the mandates of the SCRIE Statute. Had the Legislature intended for the administrators to set the rent in this way — or for the responsible agency to have more flexibility in determining the date at which the rent should be frozen — then the Legislature would have indicated its intent. Reliance on the Legislature’s failure to amend RPTL 467-b is, at best, questionable. "Legislative inaction, because of its inherent ambiguity, 'affords the most dubious foundation for drawing positive inferences’.” (Clark v Cuomo, 66 NY2d 185, 190-191 [1985] [citation omitted].)
Plaintiffs’ third cause of action also asserts that defendants have violated RPTL 467-b and 9 NYCRR 2202.20 in their inter *692 pretation of the phrase "eligibility date.” For the same reason set forth above, the court agrees. Again, the use of the term "eligibility” must be taken on its face.
I have evaluated all the other arguments raised by the parties, and they do not alter my determination that defendants acted capriciously, arbitrarily, and in contravention of law in failing to issue rent exemption orders to Nunez, Voci and Sultan in an amount based upon the rent in effect on their eligibility dates. Therefore, plaintiffs are entitled to summary judgment on their first, second and third causes of action.
However, defendants are entitled to prevail on their cross motion seeking dismissal of plaintiffs’ claim for retroactive relief. Plaintiffs did not address this prong of the cross motion or show any facts supporting their claim of entitlement to retroactive benefits.
Conclusion
The court notes that it has considered all the arguments of the parties in reaching its decision, but has only explicitly addressed those meriting discussion.

. This amount is to increase to $20,000 due to recent legislation.

. The First Department declined to extend class certification to plaintiffs’ fourth claim — that defendants’ failure to adequately reach out to the senior citizen community and to publicize the program was contrary to law. (Tin-dell v Koch, supra, 164 AD2d, at 695.) The court determined that certifying the proposed class, consisting of two subclasses, would raise significant management difficulties. Furthermore, the court concluded that by certifying the class with respect to the third cause of action it adequately protected the interests of the members of the class. (Supra.)

. These findings appeared in Local Laws, 1970, No. 31 of the City of New York, the original SCRIE Statute applicable to rent-controlled dwelling units.

. The New York State Legislature enacted Administrative Code § YY514.1.1 by chapter 598 of the Laws of 1980. This section of the Administrative Code was apparently enacted to transfer administration of the SCRIE program to HPD from CAB, and is the predecessor statute to the current SC-RIE Statute. These two sections of the Administrative Code remained on the books until the Administrative Code was recodified in 1986.