# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

307

CA 14-01640

PRESENT: CENTRA, J.P., PERADOTTO, CARNI, SCONIERS, AND DEJOSEPH, JJ.

---

SHANE VANDERWALL, PLAINTIFF-APPELLANT,

V                                                    MEMORANDUM AND ORDER

1255 PORTLAND AVENUE LLC AND SPOLETA
CONSTRUCTION LLC, DEFENDANTS-RESPONDENTS.

-------------------------------------------
SPOLETA CONSTRUCTION LLC, THIRD-PARTY
PLAINTIFF,

V

HUB-LANGIE PAVING, INC., THIRD-PARTY
DEFENDANT.

---

CELLINO & BARNES, P.C., ROCHESTER (ROBERT L. VOLTZ OF COUNSEL), FOR
PLAINTIFF-APPELLANT.

PILLINGER MILLER TARALLO, LLP, SYRACUSE (JEFFREY D. SCHULMAN OF
COUNSEL), FOR DEFENDANT-RESPONDENT 1255 PORTLAND AVENUE LLC.

RUBIN, FIORELLA & FRIEDMAN LLP, NEW YORK CITY (STEWART B. GREENSPAN OF
COUNSEL), FOR DEFENDANT-RESPONDENT SPOLETA CONSTRUCTION LLC.

---

Appeal from an order of the Supreme Court, Monroe County (Thomas A. Stander, J.), entered November 12, 2013. The order, among other things, granted those parts of the motions of defendants for summary judgment dismissing the complaint.

It is hereby ORDERED that the order so appealed from is modified on the law by denying those parts of the motions of defendants seeking dismissal of the Labor Law § 241 (6) claim insofar as that claim is based upon a violation of 12 NYCRR 23-9.5 (c) and reinstating the complaint to that extent, and as modified the order is affirmed without costs.

Memorandum: Defendant 1255 Portland Avenue LLC (1255 Portland) hired defendant-third-party plaintiff, Spoleta Construction LLC (Spoleta), as the general contractor to perform certain work in the construction of a medical office building, and Spoleta in turn hired plaintiff's employer, third-party defendant, Hub-Langie Paving, Inc. (Hub-Langie), as a subcontractor. Plaintiff allegedly sustained injuries as a result of being hit by the bucket of an excavator at the

construction site, and thereafter commenced this action, asserting claims for the violation of Labor Law §§ 200 and 241 (6), and a cause of action for common-law negligence. Defendants each moved for summary judgment seeking, inter alia, dismissal of the complaint against them, and plaintiff moved for partial summary judgment on the issue of defendants' liability pursuant to section 241 (6) insofar as plaintiff's claim thereunder was based on defendants' violation of 12 NYCRR 23-9.5 (c) and Spoleta's violation of 12 NYCRR 23-4.2 (k). Supreme Court, inter alia, granted those parts of defendants' motions seeking summary judgment dismissing the complaint against them.

As a preliminary matter, we reject plaintiff's contention that the court erred in dismissing the Labor Law § 241 (6) claim to the extent that it alleged the violation of 12 NYCRR 23-4.2 (k). That regulation "[is] not sufficiently specific to support a cause of action under Labor Law § 241 (6)" (*Webber v City of Dunkirk*, 226 AD2d 1050, 1051).

We agree with plaintiff, however, that the court erred in granting those parts of defendants' motions for summary judgment dismissing the Labor Law § 241 (6) claim insofar as that claim is based on 12 NYCRR 23-9.5 (c), and we therefore modify the order accordingly. That regulation provides, in relevant part, that "[e]xcavating machines shall be operated only by designated persons . . . [and] [n]o person[s] other than the pitman and excavating crew shall be permitted to stand within range of the back of a power shovel or within range of the swing of the dipper bucket while the shovel is in operation." Plaintiff contends that the regulation was violated because his supervisor was operating the excavator at the time of the accident despite the fact that plaintiff was the only designated operator. Plaintiff further contends the regulation was violated because he was not a member of the excavating crew at the time of the accident, and thus should not have been permitted to stand within range of the excavation bucket, which struck him. Contrary to plaintiff's contention, we conclude that his supervisor was a "designated person[]" authorized to operate the subject excavator inasmuch as he was the superintendent for plaintiff's employer, he had his own key to the excavator, and he possessed supervisory authority over both plaintiff and the entire work site (*see* 12 NYCRR 23-1.4 [b] [17]). Nevertheless, we further conclude that, although plaintiff and his supervisor were performing excavation work at the time of the incident, plaintiff was not part of any "excavation crew." In support of that conclusion, we note that the interpretation of a regulation presents a question of law for a court to resolve (*see Morris v Pavarini Constr.*, 9 NY3d 47, 51) and, in our view, the word "crew" necessarily denotes more than one worker. Here, it is undisputed that plaintiff expected to perform the subject excavation work alone, with no expectation that his supervisor would be joining him and no awareness that his supervisor had, in fact, arrived and started operating the excavator. Specifically, plaintiff's supervisor conceded that plaintiff did not see him get into the excavator as plaintiff was looking down operating a jackhammer with earplugs in. Because plaintiff was not part of any "crew" at the time of the accident, the regulation was violated when plaintiff was permitted to

stand within range of the bucket when the excavating machine was in use (*cf. Benevento v City of Buffalo*, 74 AD3d 1738, 1739; *Mingle v Barone Dev. Corp.* [appeal No. 2], 283 AD2d 1028, 1029).

Despite our conclusion that defendants violated 12 NYCRR 23-9.5 (c), we reject plaintiff's contention that he is entitled to partial summary judgment on the issue of defendants' liability with respect to the Labor Law § 241 (6) claim.  A violation of an Industrial Code provision "does not establish negligence as a matter of law but is merely some evidence to be considered on the question of a defendant's negligence" (*Puckett v County of Erie*, 262 AD2d 964, 965 [internal quotation marks omitted]; *see Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 349; *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 502 n 4).

All concur except PERADOTTO and CARNI, JJ., who dissent in part and vote to affirm in the following memorandum:  We respectfully dissent in part because we disagree with the majority that Supreme Court "erred in granting those parts of defendants' motions for summary judgment dismissing the Labor Law § 241 (6) claim insofar as that claim is based on 12 NYCRR 23-9.5 (c)."  Initially, we agree with the majority that the court did not err "in dismissing the Labor Law § 241 (6) claim to the extent that it alleged the violation of 12 NYCRR 23-4.2 (k)."  We also agree with the majority that plaintiff's supervisor "was a 'designated person[]' authorized to operate the subject excavator."  Contrary to the majority, however, we conclude that the court properly determined that plaintiff was a member of an "excavating crew," and therefore defendants did not violate 12 NYCRR 23-9.5 (c).  We would therefore affirm the order in its entirety.

Plaintiff was employed by third-party defendant Hub-Langie Paving, Inc. (Hub-Langie).  Defendant Spoleta Construction LLC (Spoleta), a general contractor, hired Hub-Langie as a subcontractor to help Spoleta construct a medical office building for defendant 1255 Portland Avenue LLC.  Specifically, "Hub Langie's job was just to do the excavating and the paving."

Hub-Langie hired plaintiff as a "pipe layer."  The position "consisted of . . . working with the excavator, being in a hole, [and] putting pipe together, whether it be water [or] sewer."  On October 20, 2008, the date of the accident at issue, plaintiff was working with his supervisor and a licenced plumber whom Hub-Langie had hired as an independent contractor.  The plumber's job was to make a connection to a water main.

When plaintiff arrived at work at 7:00 a.m., his supervisor instructed him to "go out there and expose the water main for the licensed plumber."  Plaintiff understood that to mean that he needed to take a truck, trailer, and excavator to the job site, block a lane of traffic, and "do a saw cut in the road" where the water main had been marked.

After plaintiff cut the asphalt with a saw, he attempted to "pop the asphalt out" with an excavator that he had used in the past.  When

that did not work, plaintiff shut off the excavator and removed the key.  He then attempted to break up the asphalt with a jackhammer.  Plaintiff was wearing earplugs and safety glasses and, although he was facing the excavator, he was looking down at the ground.  The excavator bucket struck plaintiff's left arm, hand, and wrist.  Plaintiff then saw his supervisor, who had his own key to the excavator, jump off the machine and run over to him.

The above facts demonstrate that, at the time of the accident, both plaintiff and his supervisor were acting as members of Hub-Langie's "excavating crew" within the meaning of 12 NYCRR 23-9.5 (c).  That regulation provides, in relevant part, that "[n]o person other than the pitman and excavating crew shall be permitted to stand within range of the back of a power shovel or within range of the swing of the dipper bucket while the shovel is in operation" (12 NYCRR 23-9.5 [c]).  As the majority acknowledges, both plaintiff and his supervisor were performing excavation work at the time of the accident (*see* 12 NYCRR 23-1.4 [b] [19]).  Moreover, they were performing that work at the same time and in the same area of the construction site.  Thus, we conclude that "plaintiff was a member of the 'excavating crew' within the meaning of 12 NYCRR 23-9.5 (c)" because both he and his supervisor were collectively performing excavation work that was "an integral part of the excavation operation" (*Mingle v Barone Dev. Corp.* [appeal No. 2], 283 AD2d 1028, 1029).

We respectfully disagree with the majority's conclusion that plaintiff was not part of an "excavating crew" simply because "plaintiff expected to perform the subject excavation work alone, with no expectation that his supervisor would be joining him and no awareness that his supervisor had, in fact, arrived and started operating the excavator."  There is nothing in 12 NYCRR 23-9.5 (c) that requires members of an excavating crew to be aware that other members of the crew are working at the same location.  In our view, the facts that plaintiff had been hired to do excavation work, that his supervisor ordered him to perform excavation work on the day of the accident, that plaintiff then commenced performing that excavation work, and that his supervisor then joined him and commenced performing excavation work on the same area establishes that plaintiff and his supervisor were both part of an "excavation crew."

The majority's implicit assertion that plaintiff, who was following his supervisor's orders, had to have some subjective understanding that he was part of the excavation crew chosen by his supervisor inverts the common understanding of how a "crew" is chosen at a workplace.  Instead of a supervisor choosing the composition of a crew, the majority's view allows the subordinate employee to opt out, in his own mind and without telling anyone else, of being assigned to a particular crew.

Moreover, the majority's interpretation of the word "crew" violates the long-established rule of construction that "general, commonly used terms . . . may not be limited by judicial . . . construction . . . and should be accorded their commonly understood meaning" (*Matter of Eastern Pork Prods. Co. v New York State Div. of*

*Hous. & Community Renewal*, 187 AD2d 320, 323; *see Matter of Murawski*, 84 AD2d 496, 498; McKinney's Cons Laws of NY, Book 1, Statutes § 94), " 'without resorting to an artificial or forced construction' " (*Feher Rubbish Removal, Inc. v New York State Dept. of Labor, Bur. of Pub. Works*, 28 AD3d 1, 4, *lv denied* 6 NY3d 711, quoting § 94). The commonly understood meaning of the word "crew" does not focus on the individual members' subjective understanding. Instead, it focuses on the commonality of the activity in which the members are engaged. Thus, a "crew" is defined as, among other things, "a group of people associated together in a common activity or by common traits or interests" (Merriam-Webster's Collegiate Dictionary 295 [11th ed 2004]). Neither that definition nor any dictionary definition offered by plaintiff in his brief focuses on the subjective understanding of crew members.

Here, it is undisputed that, at the time of plaintiff's injury, both plaintiff and his supervisor were engaged in the common activity of trying to excavate the water main, plaintiff with the jackhammer and his supervisor with the excavator. They were, therefore, both members of an excavating crew. By giving plaintiff's subjective understanding the power to redefine what it means to be in a "crew," the majority has "limited by judicial construction" the "commonly understood meaning" of that word (*Murawski*, 84 AD2d at 498), which is contrary to the intent of the drafters of 12 NYCRR 23-9.5 (c) as " 'ascertained from the words and language' " of the regulation (*Frank v Meadowlakes Dev. Corp.*, 6 NY3d 687, 692, quoting Statutes § 94).

Entered:  May 8, 2015                          Frances E. Cafarell
                                               Clerk of the Court