■ LAWRENCE G. PAPE et al., Appellants, v JOHN DOAR et al., Respondents.—Order, Appellate Term, First Department, entered May 24, 1989, which, *inter alia,* affirmed that part of a judgment of the Civil Court, New York County (Jaime A. Rios, J.), entered May 27, 1988, after a bench trial, dismissing the first cause of action of petitioners landlords' holdover petition and awarding respondents tenants judgment on their first counterclaim for the issuance of a rent-stabilized renewal lease, unanimously affirmed, without costs.

In January 1983, petitioners purchased the subject five-story brownstone on East 63rd Street in New York County for $1.2 million. At that time, the cellar of the building was used for mechanical and storage purposes. The use of the first floor has been disputed by the parties, but it appears the trial court found it was vacant space without kitchen or bathroom facilities. The second through fourth floors each contained two one-bedroom apartments, while the fifth floor contained a two-bedroom apartment in which respondents tenants resided. While the trial court found the seven apartments were habit-

able, it appears no substantial work had been undertaken on them since 1935. In February 1983, petitioners extended a three-year rent-stabilized lease to respondents tenants.

Petitioners obtained the requisite historic designations to qualify renovation expenses for income tax credits. They proceeded to expend $1.8 million on renovations. The layout and uses of the building were in part restructured. The cellar and first floor were converted into physicians' offices. The second floor, as prior to the work, contained two residential apartments. The third floor contained one apartment and part of a duplex extending up to and occupying the entire fourth floor. Respondents tenants' fifth-floor apartment was retained. The kitchens and the bathrooms of the five residential apartments were remodeled by installation of new appliances, sinks, counters and tile floors and walls. Simultaneously, all building systems, including sewage, plumbing, electrical, heating, sprinklers and chimneys, were replaced. A new elevator, 35 new windows and central air conditioning were installed. The historic features of the building, including brownstone facade, copper gutters and leaders, interior woodwork and plaster, were restored. In the rear of the building, balconies were constructed on the rear of the third and fourth floors and a garden was created with access only from the physicians' offices. Respondents tenants temporarily vacated their apartment to accommodate this renovation under a November 20, 1984 agreement with petitioners and reoccupied the apartment in February 1985, while work was still in progress.

In February 1986, petitioners brought this holdover proceeding maintaining, *inter alia,* that they were not required to issue a renewal lease as the building was now exempt from rent stabilization under the exemption of Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4) § 5 (a) (5) for "housing accommodations in buildings * * * substantially rehabilitated as family units on or after January first, nineteen hundred seventy-four". The Civil Court rejected this claim on the ground that while the premises were substantially rehabilitated, the modernization decreased the number of residential units, thereby contravening the intent of the statute, to encourage the preservation of housing accommodations. Appellate Term affirmed on the ground that "much of the work done was of a luxury nature and resulted in a net reduction in the number of habitable housing units available for occupancy."

We affirm but for different reasons. Several courts interpreting this statutory provision have perceived an intent to in-

crease the number of residential units *(see, e.g., Hickey v Bomark Fabrics,* 111 Misc 2d 812, *affd* 120 Misc 2d 597; *Estate of Romanow v Heller,* 121 Misc 2d 886; *see also, 483 Ct. St. Assoc. v Lunghi,* 129 Misc 2d 1044). While this is a vital social goal, we are unable to perceive such intent in the history, language or context of the legislation. As we have previously noted, the provision is designed to give owners an investment incentive to recoup rehabilitation costs free of stabilized rents *(Wilson v One Ten Duane St. Realty Co.,* 123 AD2d 198 [1st Dept]; *see also, Nelson v Yates,* 127 Misc 2d 234). In many situations, the rehabilitation will occur within the identical physical space previously occupied by residential units. In this context, the only manner in which additional units may be created is to construct smaller units. Had the Legislature intended to dictate such a specific restriction on the layout of rehabilitations qualifying for this exemption, it surely would have so specified. Not only did the Legislature fail to do so, but its use of the term "family units" implies quite the opposite, an intent to, at the least, not disqualify from the scope of the exemption those rehabilitations which create units larger in size and fewer in number than those previously existing in the same building. A reduction in the residential *space* existing prior to the rehabilitation might well stand on a different footing and serve to render the exemption inapplicable. However, that issue is not presented in this case as it appears the trial court did not accept respondents tenants' factual contentions in this regard. Nor do we perceive any basis in the history or language of the statute to disqualify from the exception a rehabilitation solely on the ground that the condition to which it was restored was of "excessive quality." It is for the Legislature to consider any amendments to the statute warranted by the changing housing needs of this decade.

There are, nonetheless, significant limitations on the applicability of the exemption. It should be interpreted in conjunction with provisions entitling owners of rent-stabilized buildings to rent increases for major capital improvements (Administrative Code of City of New York § 26-511 [c] [6] [b]; *see, Estate of Romanow v Heller, supra).* The exemption, as an exception to the remedial protections of rent stabilization and having alternative parallel provisions by which owners may recoup their investment, is to be strictly construed. The exemption requires that the building be "substantially rehabilitated as family units" *(Goodman v Ramirez,* 100 Misc 2d 881; *Hickey v Bomark Fabrics, supra).* We are unable to conclude

that this standard was satisfied where the rehabilitation resulted in two of the six floors being occupied as physicians' offices. In light of this determination, we do not address the issue of whether the preexisting residential units must be in substandard or deteriorated condition in order for the rehabilitation to qualify for the exemption. Concur—Murphy, P. J., Asch, Kassal and Rubin, JJ.