OPINION OF THE COURT
Douglas E. Hoffman, J.
This summary nonpayment proceeding presents the court with an issue of apparent first impression: whether a building *633 that is alleged to be substantially rehabilitated primarily to remedy conditions created by the intentional destruction by the predecessor landlord of key portions of the building as part of an admitted criminal conspiracy to harass tenants into vacating the building may qualify for an exemption from the protections of the rent stabilization laws and code. If so, this court must decide whether in fact petitioner has satisfied its burden of demonstrating an exemption from the rent stabilization laws based upon substantial rehabilitation of the building, 446 West 19th Street, New York, New York. If petitioner has carried its burden, the court must decide whether or not petitioner may obtain and enforce a final judgment of possession although there is no certificate of occupancy for this purportedly rehabilitated building, including the newly created duplex apartment forming the subject of this proceeding.
Procedural Background and Factual Findings
Well after trial the parties submitted a transcript of the extensive proceedings involving a spate of expert witnesses and posttrial memoranda. In July 2000, this court granted respondent’s posttrial motion to the extent of reopening the trial for submission of additional documentation showing that the temporary certificate of occupancy that petitioner had obtained for the first time toward the end of trial had expired and that no other certificate of occupancy has issued. The court sets forth below its findings of fact and conclusions of law.
This is an eight-unit building located at 446 West 19th Street, New York, New York. Two contiguous companion buildings owned by the same landlord are located at 448 and 450 West 19th Street, New York, New York. Until at least 1981, the subject building was fully occupied by residential tenants. The Division of Housing and Community Renewal (DHCR) has described what followed as the landlord’s “reign of terror.” The former landlord, Thomas Lydon and his partners, installed prostitutes, drug addicts and whom DHCR described in its findings as “goons” in the building to harass tenants, destroy essential building systems, set fires, flood and ransack tenants’ apartments, steal property, threaten tenants with serious physical harm and otherwise coerce tenants to flee the building or to surrender their tenancies for small sums of money. Thugs hired by the landlord used sledgehammers to damage building systems and entrance doors to individual apartments. Pursuant to the 83-page indictment and conviction in People v Lydon, indictment number 2813/84, the landlord committed these acts *634 between October 1981 and January 1983, implementing “a routine of terror,” and “conspired to force the tenants to move out of their apartments in order to exploit the real estate value of the building.” In 1986, the prior owner pleaded guilty to an array of criminal charges, including criminal conspiracy, and received a substantial prison sentence.
The DHCR made a finding of harassment as well. In the agency’s 43-page decision, DHCR determined in a contested administrative proceeding that the landlord engaged in a systematic pattern of harassment from 1981 through 1986 and found that the landlord set fires, hired thugs to rob and harass tenants, flood apartments, establish drug shooting galleries, damage or destroy building systems and engage in myriad other forms of harassment.
The agency also found that the prior landlord, through harassment, had forced the vacatur of the tenant of apartment 4A, the subject apartment herein, and determined that the rent regulatory status of the apartment would remain at least until such a finding had been vacated. To date, there has been no vacatur of the DHCR findings concerning the subject apartment.
In addition to the personal toll inflicted upon the tenants of the subject building, the damage to the physical structure of the property was significant. Windows, floors, the boiler, pipes and electrical fixtures suffered major damage. The roof was damaged and there were many holes in the walls of the building. At trial the parties did not and could not have seriously disputed the overwhelming evidence that the significant damage to the building was a direct result of the intentional conduct of petitioner’s predecessor in interest. Indeed, Jerry Atkins, the principal of petitioner at the time of the alleged substantial rehabilitation, verified the extensive damage caused by the predecessor landlord.
Petitioner 446 Realty Co. purchased the building from Mr. Lydon and his partners in 1986. Mr. Atkins was a principal of petitioner at that time. Petitioner purchased the building from the prior owners, as, in Mr. Atkins’ words, “they were on their way to jail.”
In early 1987, petitioner reached an extensive written agreement with the remaining tenants of the three buildings. The agreement contemplated significant repair to the subject building and transfer of remaining tenants of 450 to 446 West 19th *635 Street. Tenants were congregated in the apartments on the first three floors of 446 West 19th Street. The agreement expressly contemplated that petitioner would receive rent increases for the repairs based upon Major Capital Improvements (MCI), but that for five years these tenants would not be subject to any MCI increases based upon work performed. Petitioner then effected some repair to the subject building, the scope of which was strongly disputed at trial, and added a fifth floor to the subject building, combining the fifth floor with the two existing fourth floor apartments to make two duplex apartments, including the subject premises. Petitioner claims that the repairs it effected removed the building from rent stabilization.
Acting upon its assertion that the building was not subject to rent stabilization, petitioner rented the subject fourth floor duplex (4A) to respondent’s predecessor, claiming that it may lawfully charge a “first rent” to that tenant of $1,495 per month,[1] far in excess of the prior stabilized monthly rent of $138.36. Respondent subsequently rented the duplex from petitioner for $1,400 per month for November 1, 1994 through October 31, 1995. Renewal leases called for rents increasing to $1,675 per month. Claiming that the apartment is rent stabilized, respondent withheld rent for October and November 1998. This proceeding ensued.
Discussion
Criminal Conduct and the Substantial Rehabilitation Exemption
Section 2520.11 (e) of the Rent Stabilization Code (9 NYCRR [RSC]) exempts from rent stabilization coverage buildings that have been substantially rehabilitated. This regulation is based upon Emergency Tenant Protection Act of 1974 ([ETPA] L 1974, ch 576, § 4, as amended) § 5 (a) (5) (McKinney’s Uncons Laws of NY § 8625 [a] [5]). This statute provides that “housing accommodations in buildings completed or * * * substantially rehabilitated as family units on or after January first, nineteen hundred seventy-four” are exempt from rent regulation. Neither the Rent Stabilization Law of 1969 (Administrative Code *636 of City of NY, tit 26, ch 4 [RSL]) nor the RSC expressly defines what work qualifies as substantial rehabilitation. Review of the legislative history of this statute provides no direct assistance in determining whether or not this exemption from the rent laws applies.
Courts have struggled greatly over the years in seeking to define what work constitutes substantial rehabilitation sufficient to remove a building from the purview of the rent stabilization laws. In reaching a determination of whether or not a building is substantially rehabilitated pursuant to the ETPA, DHCR employs Operational Bulletin 95-2. To qualify for a finding of substantial rehabilitation pursuant to the administrative agency, a landlord must completely replace with new systems at least 75% of 17 building-wide and apartment systems: plumbing, heating, gas supply, electrical wiring, intercom, window, roof, elevator, incinerator or waste compactor, fire escape, interior stairway, kitchen, bathroom, floor, ceiling and wall surfaces, pointing or exterior surface repair as needed, and all doors and frames including the replacement of non-fire-rated items with fire-rated ones. DHCR excepts from this requirement “a particular component * * * [that] has recently been installed or upgraded so that it is structurally sound and does not require replacement.”
As DHCR’s policies concerning the substantial rehabilitation section of the ETPA constitute statutory reading and analysis, dependent upon accurate interpretation of legislative intent, an area within the province of the courts, as opposed to an understanding of underlying operational practices or evaluation of factual data, the court is not bound by DHCR’s standards for substantial rehabilitation. (See, Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980]; Buhagiar v State of New York Div. of Hous. & Community Renewal, NYLJ, Nov. 3, 1999, at 27, col 2 [Sup Ct, NY County].) DHCR’s detailed criteria are, however, instructive and comport with the policies underlying the substantial rehabilitation exception to the rent stabilization laws.
The court declines petitioner’s invitation to view, out of context, simply whether or not there was “rehabilitation” and whether this work was “substantial.” This undelineated exemption provision of the ETPA must be viewed in light of the remedial purposes of the ETPA and the RSL to expand protections of the rent laws and prevent the exaction of unreasonable and oppressive rents. (81 Russell St. Assoc. v Scott, NYLJ, *637 Aug. 25, 1993, at 24, col 2 [Civ Ct, Kings County 1993] .)[2] Although the Appellate Division, First Department, has stated that the words “substantially rehabilitated” must be accorded their commonly understood meaning (Matter of Eastern Pork Prods. Co. v New York State Div. of Hous. & Community Renewal, 187 AD2d 320, 323 [1st Dept 1992]), it has also stated that as an exception to the remedial provisions of the RSL, the exemption must be strictly construed. (Pape v Doar, 160 AD2d 213 [1st Dept 1990].)
This limited exemption to the rent stabilization laws is designed to encourage real rehabilitation of buildings for residential living purposes and to increase habitable family units available to New York City residents. (Matter of Eastern Pork Prods. Co. v New York State Div. of Hous. & Community Renewal, supra, at 324.) It is not intended to take buildings outside the purview of the rent stabilization laws for mere repairs, even if substantial, but is intended as an incentive to landlords truly to rehabilitate a building to create habitable apartments for residential use. (Matter of Romanow v Heller, supra, at 887, n 2.)
Where, as here, the building had been and will continue to be occupied by residential tenants and the substantial rehabilitation exemption would remove from rent stabilization all apartments vacant at the time of the alleged renovation, even those which have not been renovated, the exemption should not be granted unless the renovation was so extensive that the landlord could not recoup its investment pursuant to other applicable rent laws, such as those permitting rent increases for MCI (9 NYCRR 2522.4 [a] [2]), or individual apartment new equipment or improvement (9 NYCRR 2522.4 [a] [1], [4]) increases. (Pape v Doar, supra, at 215.)
*638 While no legislative history directly addresses the question, the purposes behind the enactment of this limited exemption to rent stabilization coverage preclude a holding of substantial rehabilitation sufficient to exempt the building from rent stabilization when the landlord has itself intentionally through acknowledged criminal conduct and harassment created the actual conditions requiring repair. This exemption was designed to encourage the upgrading of building conditions and increases in habitable housing. The exemption from rent stabilization was to provide the financial incentive for such work. (Wilson v One Ten Duane St. Realty Co., 123 AD2d 198 [1st Dept 1987].) If a landlord could eliminate rent regulation through criminal conduct and wanton destruction of building systems designed expressly to empty the building of regulated tenants to take advantage of the real estate market and then claim exemption from rent regulation when the destroyed systems are repaired, obviously enormously increasing the sale value of the building, the beneficent purpose of this exemption would be turned on its head.
Neglect by a landlord of building maintenance is an unfortunate fact of life concerning some buildings in this city and the remediation of such neglect when buildings deteriorate to such an extent that they are virtually uninhabitable was clearly within the contemplation of the Legislature when it enacted the substantial rehabilitation exemption to the rent stabilization laws. Intentional criminal conduct by a landlord specifically as part of a criminal conspiracy to empty the building of its tenants and obtain the benefit of a favorable real estate market was not within the Legislature’s contemplation of the beneficent aspects of this legislation. Permitting an exemption under such circumstances would contradict the policies underlying State and local anti-harassment laws. (See, e.g., Penal Law § 241.05.)
It is noteworthy that landlords are denied a variety of benefits if harassment forms part of the factual predicate underlying a claim of entitlement to these benefits. For example, a landlord who harassed tenants into vacating a single room occupancy building is denied a work permit in order to convert a building to a class A multiple dwelling. (Administrative Code §27-198.2 [d] [4] [a] [iii].) A landlord found guilty of harassment may not obtain maximum base rent increases. (Seril v Division of Hous. & Community Renewal, 163 AD2d 131 [1st Dept 1990], lv denied 76 NY2d 708 [1990], reconsideration denied 76 NY2d 936 [1990].) The public *639 policy against harassment of tenants is manifested, inter alia, in 9 NYCRR 2205.1 (b); 2206.5, 2525.5 and 2526.2 (c) (2).
The court recognizes that petitioner is not the landlord who engaged in the intentional destruction of building systems. This does not alter the ultimate outcome of this proceeding. Petitioner is bound by the knowledge and conduct of its predecessor in interest. (52 Riverside Realty Co. v Ebenhart, 119 AD2d 452, 453 [1st Dept 1986].) The Appellate Division, First Department, has held that a successor landlord takes subject to sanctions against a predecessor landlord based upon the predecessor’s harassment of tenants. The Court has held that outstanding DHCR orders finding harassment of tenants to obtain vacatur of apartments precludes establishment of first rents dating back to the period within which the subsequent owners of the building, who engaged in no harassment, were still under existing sanctions for harassment. (Matter of Meko Holding v Joy, 107 AD2d 278 [1st Dept 1985], appeal dismissed without opn 65 NY2d 923 [1985].) The Appellate Division held further that termination of an order finding harassment must be made by formal application supported by affirmative proof that the landlord had not engaged in the harassment since the issuance of the order. (Id., at 282, citing New York City Rent and Eviction Regulations § 74 [c] [now 9 NYCRR 2206.5 (c)]; New York City Rent and Rehabilitation Law [Administrative Code] § Y51-11.0 [now § 26-413].) The Appellate Division concluded that once a finding of harassment has been issued in the form of an order against the landlord, with sanctions imposed, even an innocent subsequent landlord must come forward with convincing evidence that the predicate for the harassment order no longer exists, before the findings of harassment may be vacated and sanctions lifted. (Id.) These sanctions are not lifted retroactively.
Moreover, petitioner 446 Realty Co. purchased the building directly from the landlord whom both the criminal courts and the administrative State housing agency found intentionally caused these conditions. Petitioner purchased the building with full actual and constructive knowledge of the conduct of its immediate predecessor in interest as, in the words of its former principal, the prior landlords were on their way to jail. Petitioner, for purposes of the substantial rehabilitation exemption to the rent stabilization laws, must stand in the shoes of its predecessor in interest. Free from rent stabilization, the building would be worth profoundly more than if continued rent stabilized. This statute, designed to create affordable, *640 decent housing in this city, was not created to embrace a windfall to the old or present landlord based upon intentional criminal destruction of basic systems in the building. DHCR acknowledges this policy in its operational bulletin which, in pertinent part, precludes a finding of substantial rehabilitation where, as here, there is an outstanding finding of harassment of tenants or the commission of arson.
The court rejects petitioner’s assertion that the intentional and criminal nature of the destruction of building systems is irrelevant to this proceeding. Petitioner claims that there is nothing in the language of the statute that would preclude its application when a landlord intentionally destroys building systems necessitating substantial rehabilitation. Taking petitioner’s argument to its logical conclusion, any landlord by intentionally destroying essential building systems may reap an ill-gotten fortune by merely repairing or putting back in good order that which he has intentionally destroyed through criminal conduct. There would be “rehabilitation” and it would be “substantial” according to dictionary definition. This was certainly not the beneficent intent of the Legislature when it sought to provide an incentive to a landlord to renovate dilapidated properties to provide additional habitable apartments for City residents. Thus, the intentional criminal conduct of petitioner’s predecessor in interest precludes application of this limited exemption from rent regulation.[3]
After reviewing the entire record in this matter, the court concludes that, with the exception of the creation of the two new duplex apartments, most of the work petitioner performed during 1987 through 1989 was directed toward satisfying an extensive written agreement into which petitioner and the remaining tenants of 446-450 West 19th Street entered in early 1987. Pursuant to this agreement, tenants were to continue to occupy certain apartments in the subject building, while remaining tenants from 450 West 19th Street, who did not accept buyouts, assumed occupancy of other vacant apartments in the building. The landlord was to effect specified repairs in the subject building prior to the remaining tenants of 450 West 19th Street congregating in the subject building. Review of the *641 list of repairs indicates a significant correlation between that list and the repairs the court found (supra) that petitioner had actually performed in the subject building.
The agreement contemplated further that tenants of the three buildings would waive damage and other claims against petitioner and agree to congregate at the subject building in exchange for the landlord conducting the specified repairs, paying the tenants a modest sum for damages and waiving for five years against these tenants any claims for MCI or other rent increases based upon the work performed at 446 West 19th Street. Not only could much of the work petitioner performed in this tenanted building qualify for MCI or other rent increases, permitting petitioner to recoup its costs, but the written agreement expressly contemplated such an arrangement, and implicitly, the continuation of rent stabilization. Moreover, the landlord already received major consideration for the work performed through the written agreement with the remaining tenants, including waiver of damage claims and receipt of two apparently empty buildings, 448 and 450 West 19th Street, which petitioner apparently renovated with the assistance of J-51 tax benefits. Combined with the tenfold increase in the rents it received based upon construction of the subject duplex apartment, petitioner already received great consideration for the work it performed in the subject building from 1987 through 1989, exemption from rent stabilization notwithstanding.
For the reasons set forth above, the court concludes that petitioner conducted some work in the subject building from 1987 through 1989, almost entirely without obtaining permits, but did not perform work establishing that the building as a whole was substantially rehabilitated.
For the reasons stated above, the court dismisses the petition.
[Portions of opinion omitted for purposes of publication.]

. As noted in discussion infra, of respondent’s rent overcharge claim, neither party introduced evidence at trial establishing the rent petitioner charged the first tenant of the new duplex apartment, 4A, the subject premises. Off-the-record discussions pegged the first rent at $1,495 per month or as low as $1,200 per month.

. As the court stated in Matter of Romanow v Heller (121 Misc 2d 886, 889, n 7 [Civ Ct, NY County 1983], affd 134 Misc 2d 606 [App Term, 1st Dept 1987]):
“The meaning of undefined words depends on the meaning of the whole act. Words absolute in themselves and the broadest and most comprehensive language may be qualified and restricted by reference to other parts of the statute, or by the facts to which they relate. Not only are different parts of the same act interpreted together, but different acts which are in pari materia are to be construed each in light of the other (McKinney’s Cons Laws of NY, Book 1, Statutes, § 97). Also, statutes designed to promote the public good should receive a liberal construction and be expounded in such a manner that they may, as far as possible, attain the end in view. They should not be construed so as to advance a private interest at the expense of the public good. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 341.)”

. This is not to say that at some point the temporal and transactional relationship between the present landlord conducting rehabilitation and the original landlord engaging in criminally destructive conduct in a building does not become so attenuated that the preclusion of application of the exemption based upon the criminal conduct does not hold. That is not the case here, however.