[916 NYS2d 2]

Columbus 95th Street, LLC, Appellant, v New York State Division of Housing and Community Renewal, Respondent. Columbus House Tenants Association et al., Intervenors-Respondents.

First Department, December 28, 2010

**APPEARANCES OF COUNSEL**

*Wolf Haldenstein Adler Freeman & Herz, LLP*, New York City (*Maria I. Beltrani* of counsel), for appellant.

*Gary R. Connor*, New York City (*Martin B. Schneider* of counsel), for New York State Division of Housing and Community Renewal, respondent.

*Himmelstein, McConnell, Gribben, Donoghue & Joseph*, New York City (*David Hershey-Webb* and *Serge Joseph* of counsel), for Columbus House Tenants Association and another, respondents.

### OPINION OF THE COURT

Mazzarelli, J.

In March 2006, Columbus Housing, Inc. (Housing) dissolved and petitioner Columbus 95th Street (Columbus) immediately became the owner of 95 West 95th Street, New York, New York. Housing had operated the building as a "Limited-Profit Housing Company," or "Mitchell-Lama," for approximately 36 years, and had enjoyed the benefits, and was bound by the restrictions, embodied in article II of the Private Housing Finance Law.

The Private Housing Finance Law was enacted to encourage the development of low- and middle-income housing by offering state and municipal assistance to developers in the form of long-term, low-interest government mortgage loans and real estate tax exemptions. In return, developers agreed to regulations that restricted the rents they charged, their profits, and their selection of tenants. At the inception of the program in 1955, Mitchell-Lama buildings were required to operate pursuant to the Private Housing Finance Law for 35 years before they could prepay their mortgage and exit the program. However, in 1960, because the 35-year period was discouraging participation in the program, the Legislature amended the Private Housing Finance Law to reduce that minimum to 20 years, and to permit buildings to leave the program without approval.

Upon leaving Mitchell-Lama, the rents which a landlord could charge were still regulated, not pursuant to the Private Housing Finance Law, but rather by the New York City Rent Stabilization Law of 1969 (RSL), either directly or by virtue of the Emergency Tenant Protection Act of 1974 (ETPA) (see *Matter of KSLM-Columbus Apts. v New York State Div. of Hous. & Community Renewal*, 6 AD3d 28, 30 [2004], *mod on other grounds* 5 NY3d 303 [2005]). The ETPA was enacted in 1974 for the express purpose of bringing within the scope of the RSL those apartments that had become deregulated by virtue of the Vacancy Decontrol Law of 1971 (VDL) or that had escaped the grip of the Emergency Housing Rent Control Law of 1946 (RCL). It reaffirmed the need for affordable housing in New York City and "captured" into the RSL apartments which had been, or which otherwise would be, deregulated. The ETPA also authorized DHCR to adopt the Rent Stabilization Code (RSC), which would apply to rent-stabilized buildings in New York City and allowed DHCR to adopt regulations necessary to fully implement the RSL.

The RSL, as applied pursuant to the ETPA, provides the mechanism for calculating the initial, or base, rents for all apartments entering the rent stabilization system. Specifically, RSL (Administrative Code of City of NY) § 26-512 provides:

> "b. The initial regulated rent for housing accommodations subject to this law on the local effective date of the emergency tenant protection act of nineteen seventy-four or which become subject to this law thereafter, pursuant to such act, shall be:

"(1) For housing accommodations which were regulated pursuant to this law or the city rent and rehabilitation law prior to July first, nineteen hundred seventy-one, and which became vacant on or after such date and prior to the local effective date of the emergency tenant protection act of nineteen seventy-four, the rent reserved in the last effective lease or other rental agreement; provided that such initial rent may be adjusted on application of the tenant pursuant to subdivision b of section 26-513 of this chapter.

"(2) For housing accommodations which were regulated pursuant to the city rent and rehabilitation law on the local effective date of the emergency tenant protection act of nineteen seventy-four, and thereafter become vacant, the rent agreed to by the landlord and the tenant and reserved in a lease or provided for in a rental agreement; provided that such initial rent may be adjusted on application of the tenant pursuant to subdivision b of section 26-513 of this chapter.

"(3) *For housing accommodations other than those described in paragraphs one and two of this subdivision, the rent reserved in the last effective lease or other rental agreement*" (emphasis added).

It is undisputed that in the case of Columbus, the RSL applied pursuant to the ETPA, because each of the apartments in the building had experienced at least one vacancy on or after July 1, 1971 (*see KSLM-Columbus Apts.*, 5 NY3d at 315-316). Because none of the apartments owned by Columbus had been deregulated by virtue of the VDL (*see* RSL § 26-512 [b] [1]) or had been controlled by the Rent and Rehabilitation Law and then vacated after January 1, 1974 (*see* RSL § 26-512 [b] [2]), they are covered by RSL § 26-512 (b) (3), which serves as a "catchall." Thus, upon their emergence from Mitchell-Lama, the apartments owned by Columbus could not be rented for any more than "the rent reserved in the last effective lease or other rental agreement."

On or about April 20, 2006, Columbus filed 248 individual applications (one for each of the apartments in the building) with DHCR, asking that the initial rent allowable by the RSL be increased. The applications sought relief under RSL § 26-513 (a), which provides, in pertinent part, as follows:

"The tenant or owner of a housing accommodation made subject to this law by the emergency tenant protection act of nineteen seventy-four may, within sixty days of the local effective date of this section or the commencement of the first tenancy thereafter, whichever is later, file with the commissioner an application for adjustment of the initial legal regulated rent for such housing accommodation. *The commissioner may adjust such initial legal regulated rent upon a finding that the presence of unique or peculiar circumstances materially affecting the initial legal regulated rent has resulted in a rent which is substantially different from the rents generally prevailing in the same area for substantially similar housing accommodations*" (emphasis added).

In the applications, Columbus contended that it was entitled to the increase because the building had previously been in the Mitchell-Lama program and had been subject to artificially depressed rents constituting a "unique or peculiar circumstance." This circumstance, it asserted, materially affected the initial stabilized rents which could be charged for all of the apartments in the building, insofar as they were based on "the rent reserved in the last effective lease or other rental agreement" (RSL § 26-512 [b] [3]), and were thus substantially below market.

DHCR did not immediately take action on the applications, other than consolidating them under a common docket number. Rather, over the ensuing year and a half, representatives of Columbus and representatives of the agency met approximately seven times to negotiate a settlement of Columbus's demands. In the meantime, on or about August 1, 2007, DHCR proposed RSC (9 NYCRR) § 2522.3 (f) (4), a regulation clarifying RSL § 26-513 (a). The proposed amendment provided as follows:

"Previous regulation of the rent for the housing accommodation under the [Private Housing Finance Law] or any other State or Federal law shall not, in and of itself, constitute a unique and peculiar circumstance within the meaning of this subdivision. Any change in economic circumstances arising as a consequence of the termination of such prior regulation of rent may only be addressed in a proceeding for adjustment of the legal regulated rent

under paragraphs (b) and (c) of section [2522.4] of this code." (29 NY Reg, issue 31, Aug. 1, 2007.)[1]

On November 2, 2007, after extensive public hearings, DHCR adopted the new regulation. On September 28, 2007, after publication of the new regulation, but before its adoption, Columbus commenced this CPLR article 78 proceeding to compel DHCR to process its applications under separate docket numbers. After the new regulation was formally adopted, Columbus sought leave to amend its petition to include allegations that the new regulation was arbitrary, unconstitutional, and ultra vires. Columbus argued that RSL § 26-513 (a) provided former Mitchell-Lama buildings with an absolute right to a rent increase by virtue of the "unique" or "peculiar" circumstance that their rents had been artificially depressed by the Private Housing Finance Law. The new regulation, they argued, directly contravened that statutory mandate. Columbus also sought and secured a temporary injunction, staying DHCR from processing any of its applications. By interim order dated March 11, 2008, the court granted petitioner's motion for leave to amend the petition and continued the stay. On or about March 3, 2008, the Attorney General and DHCR filed motions to dismiss the amended petition.

Supreme Court granted the petition to the limited extent of directing DHCR to proceed with processing Columbus's application and to determine the matter within 150 days. The court otherwise denied the petition. In so deciding, the court found that

> "[a]dopting the owner's arguments in this case would permit a wholesale increase in rents on a building-wide basis in excess of 200% per tenant as soon as the building becomes rent stabilized. Such a result would be at odds with the existing statutory and regulatory scheme and the overall policy behind the rent laws to prevent excessive rent increases." (2009 NY Slip Op 32791[U], *13.)

Furthermore, the court held that DHCR had not exceeded its authority in promulgating RSC § 2522.3 (f) (4), noting that the term "unique [or] peculiar" had a history of being interpreted as applicable only to discrete circumstances

---

1. RSC § 2522.4 (b) and (c) permit a landlord to apply for a rent reduction based on "hardship." "Hardship" is evaluated by considering "the relationship between the annual rent and a calculation of either the annual net income or the annual operating expenses of the building" (*KSLM-Columbus Apts.*, 6 AD3d at 32-33).

"such as unusual pressure or necessity affecting the rental of a single housing accommodation at an unusually low rent; rent established by a prior owner who was mentally impaired or suffering from a condition rendering him incapable of normal business judgment; a building in receivership where the receiver set the initial maximum rents substantially below prevailing rents for comparable accommodations; or where a prior owner was renting at below-market rates to a family member." (*Id.* at \*20.)

The court rejected Columbus's position that the Court of Appeals decision in *KSLM-Columbus Apts.* (5 NY3d 303 [2005], *supra*) controlled the outcome of this case and required that RSC § 2522.3 (f) (4) be struck down. Supreme Court found that while *KSLM* authorized owners of post-1974 Mitchell-Lama buildings to apply for rent increases based upon RSL § 26-513 (a), it did not mandate that those owners were automatically entitled to rent increases solely on the basis of having been in the Mitchell-Lama program.

The court declined to rely on certain DHCR opinion letters which Columbus contended established that DHCR actually shared its interpretation of RSC § 2522.3 (f) (4). It stated that the letters "cannot be construed as binding policy or precedent that a building's former Mitchell-Lama status, standing alone, automatically entitles an owner to a [unique or peculiar] rent increase." (2009 NY Slip Op 32791[U], \*12.) Finally, the court held that there was no basis to limit the November 2007 regulation to prospective application, as there had been no change in the law, or willful or negligent delay by DHCR.

The Court of Appeals has repeatedly held that our role as a reviewing court, when determining the validity of a challenged regulation, "is a limited one" (*Ostrer v Schenck*, 41 NY2d 782, 786 [1977]). It has said that the challenger of a regulation must establish that the regulation "is so lacking in reason for its promulgation that it is essentially arbitrary" (*id.* [internal quotation marks and citation omitted]; *see Matter of Consolation Nursing Home v Commissioner of N.Y. State Dept. of Health*, 85 NY2d 326, 331 [1995] ["(t)he standard for judicial review of an administrative regulation is whether the regulation has a rational basis and is not unreasonable, arbitrary or capricious"]). Thus, a regulation should be struck down only if it is in conflict with the provisions of an enabling statute or inconsistent with the design and purpose of an overarching statutory

scheme (*see Matter of City of New York v Stone*, 11 AD3d 236 [2004]).

In determining a statute's intent, we resort to standard rules of statutory construction, which have been well established. The Court of Appeals has stated that "[i]t is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature," but has also "correspondingly and consistently emphasized that where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used" (*Matter of Raritan Dev. Corp. v Silva*, 91 NY2d 98, 106-107 [1997] [internal quotation marks, citation and emphasis omitted]).

According to Columbus, RSC § 2522.3 (f) (4) contravenes the purpose of the RSL, which it correctly describes as having been designed to balance the need for affordable housing with the need to ensure that building owners can make a reasonable profit. It argues that the RSL must be read in a way that avoids situations where landlords are saddled with unreasonably deflated rents because of regulation. Columbus urges us to read RSL § 26-512 (b) (3) and § 26-513 (a) together, and conclude that, in combination with each other, the two sections reflect the Legislature's intent to peg *all* initial post-Mitchell-Lama stabilized rents to market value. In other words, Columbus contends that, notwithstanding section 26-512 (b) (3)'s clear mandate that the initial stabilized rents for all emerging Mitchell-Lama apartments be based on the last existing rent during the Mitchell-Lama regime, section 26-513 (a) permits DHCR to conclude that the very fact of former Mitchell-Lama regulation constitutes a "unique or peculiar" circumstance necessitating a more fair rent.

Columbus attempts to bolster its argument by citing to this Court's decision in *KSLM-Columbus Apts.* (6 AD3d 28 [2004], *supra*). The KSLM building, which, like the Columbus building, had recently emerged from Mitchell-Lama, applied for rent increases pursuant to RSL § 26-513 (a) on the same ground as Columbus, that is, that former regulation under the Private Housing Finance Law was a "unique or peculiar" circumstance which if not corrected would keep rents artificially low. Unlike here, DHCR did not reject the application on the merits. Rather, it took the position that RSL § 26-513 (a) did not apply because the building was regulated directly by the RSL and not by the RSL through the ETPA (again, section 26-513 [a] expressly applies only to the latter situation). DHCR never took a position

in the *KSLM* case as to whether a "unique or peculiar circumstance" existed by virtue of that building having left Mitchell-Lama regulation, so as to justify a rent increase. Accordingly, neither this Court, nor the Court of Appeals, was asked to determine the issue presented here. Rather, the issue in *KSLM* was limited to whether DHCR initially had jurisdiction to consider the petitioner's application at all. This Court held that the building was rent stabilized pursuant to the ETPA, as opposed to being regulated directly by the RSL. Thus, we determined that the petitioner was entitled to apply for a base rent increase pursuant to RSL § 26-513 (a), and was not limited to filing a "hardship" application under RSC § 2522.4 (b) and (c). The Court of Appeals modified by holding that only those apartments which became vacant on or after July 1, 1971 were subject to the ETPA. Focusing on this Court's decision in *KSLM*, Columbus presents the following argument, which consists of disparate quotations cut from the opinion and then pasted back together:

> "[A]s this Court found, 'the economic disadvantage a building owner would encounter upon losing its Mitchell-Lama financing and tax incentives,' which justified DHCR's original 'awareness that housing developments emerging from a more stringent state or federal regulatory system,' such as the [Private Housing Finance Law], 'should be entitled to use that as a basis for the "unique or peculiar circumstances" requirement necessary to apply for an initial rent adjustment under RSL 26-513 (a).' [6 AD3d] at 39, 772 NYS2d at 673."

Columbus separately argues that DHCR was estopped from adopting the new regulation. In support of its position, Columbus relies on a letter dated October 19, 1994, in which former DHCR Commissioner Donald M. Halperin, writing to the Deputy Assistant Secretary of the United States Department of Housing and Urban Development (HUD), suggested that owners of former Mitchell-Lama apartments might find some success in applying for rent increases under RSL § 26-513 (a) based strictly on their former Mitchell-Lama status. Columbus also cites to two additional letters to HUD from a DHCR official dated August 24, 1995 and May 16, 1996, which opined that rent increases "may be warranted based on the unique and peculiar circumstance of the development emerging from a more stringent state or federal regulatory program."

Columbus further argues that DHCR is bound by certain actions the agency took in the immediate wake of the Court of Appeals decision in *KSLM*. Specifically, it points out that, after that case was decided, DHCR considered the applications which the Court of Appeals ruled were properly submitted under RSL § 26-513 (a) and, for those applications which were not disposed of by settlement, accepted the petitioner's argument that the rents should be increased to market rates based on the very fact that the building was formerly in the Mitchell-Lama program.

Finally, Columbus contends that, even if the new regulation was properly enacted, it should not be applied to it retroactively. This, it claims, is because DHCR acted in bad faith by delaying any determination of Columbus's applications so it would have sufficient time to promulgate the regulation.

Having considered all of these arguments, we conclude that Columbus did not overcome its "heavy burden" of establishing that RSC § 2522.3 (f) (4) is inconsistent with RSL § 26-512 (b) (3) and § 26-513 (a) and is thus unreasonable and arbitrary (*Consolation Nursing Home*, 85 NY2d at 331). We are required to read the statute according to its plain language, and the plain language of RSL § 26-512 (b) (3) is clear. The initial rent for *all* apartments that become regulated for any reason other than because they were previously deregulated by the VDL (§ 26-512 [b] [1]), or because they were previously rent controlled but then vacated (§ 26-512 [b] [2]), is not the market rate, but the rent reserved in the previous lease. There is no concrete legislative history or other evidence to establish that the Legislature meant to permit former Mitchell-Lama owners to charge market rents to tenants upon exiting the program. There is some appeal to Columbus's claim that the statute provides a disincentive for Mitchell-Lama buildings to leave the program. However, in light of the plain language of the statute, this argument is better addressed to the Legislature (*see Joblon v Solow*, 91 NY2d 457, 465 n 2 [1998]). We note, further, that Columbus fails to account for the fact that the result of our adopting its position would be anathema to the stated goals of the RSL, as it would cause a drastic increase in the rents of existing tenants who had no control over their landlord's decision to opt out of Mitchell-Lama.

Columbus's argument that RSL § 26-513 reflects the Legislature's intention that initial rents for emerging Mitchell-Lama buildings should always be pegged to market rates, notwithstanding the plain language of RSL § 26-512 (b) (3), would

require a tortured interpretation of the RSL. It is simply not reasonable to conclude that, instead of declaring all initial rents to be tied to the market rate in the very section providing for initial rents, the Legislature instead stated the opposite but then devised a mechanism by which all emerging Mitchell-Lama buildings could realize market rents. This is the very type of "artificial or forced construction" which is not to be employed by a reviewing court (*Matter of Schmidt v Roberts*, 74 NY2d 513, 520 [1989] [internal quotation marks and citation omitted]).

In any event, much like RSL § 26-512 (b) (3), the language of RSL § 26-513 (a) does not, by itself, permit the interpretation ascribed to it by Columbus. Columbus contends that the word "unique," when affording it its dictionary definition of "uncommon" or "unusual," can apply to former Mitchell-Lama buildings. This, it argues, is because there are relatively few such buildings when compared to all of the other types of multiple dwellings found throughout New York City. While this may be true, it does not permit the conclusion that the Legislature meant to afford a step-up to market rents based on the simple fact that a building had left the Mitchell-Lama program. A far more sensible interpretation of the phrase "unique or peculiar" is that it applies to situations which would not have been reasonably foreseeable to a landlord when forming its assumptions as to the initial rent it could charge under rent stabilization.

The correct view of the term "unique or peculiar circumstances" was illustrated in *207 Realty Assoc. v New York State Div. of Hous. & Community Renewal* (297 AD2d 569 [2002]). In that case, this Court agreed with DHCR that the landlord

> "established the existence of unique and peculiar circumstances over a 17-year period based on the expulsion of a prior owner from the Rent Stabilization Association, pervasive mismanagement of the subject premises by a manager appointed by the court pursuant to RPAPL article 7-A, and numerous inconsistent rulings as to the status of various units at the premises issued by administrative agencies, including respondent" (*id.* at 570).

Similarly, DHCR has permitted rent increases based on the "unique or peculiar" circumstance of a previous owner having

rented to relatives at depressed rates.[2] In contrast, it simply cannot be said that emerging from Mitchell-Lama was a "unique" or "peculiar" circumstance when Columbus's reasonable expectation, based on the clear language of RSL § 26-512 (b) (3), should have been that upon its emergence the initial regulated rent would be "the rent reserved in the last effective lease or other rental agreement" (RSL § 26-512 [b] [3]).

Neither the decision of this Court in *KSLM*, nor that of the Court of Appeals, lend any support to Columbus's position. The question of whether the mere fact of emergence from Mitchell-Lama constituted a "unique or peculiar" circumstance justifying a base rent increase was not directly addressed by either Court. Rather, the issue before this Court and the Court of Appeals in *KSLM* focused on different language in RSL § 26-513 (a), that is, whether the applicant was the "owner of a housing accommodation *made subject to this law by the emergency tenant protection act of nineteen seventy-four*" (emphasis added). Columbus, in forming its argument here, focuses on certain language in this Court's decision which, when taken out of context, can be read as endorsing the view that emergence from Mitchell-Lama, in and of itself, constitutes a "unique or peculiar" circumstance justifying an increase in base rent. However, the passages it quotes are not controlling. Moreover, nowhere in the Court of Appeals decision is there any language which supports the holding urged on this Court by Columbus. We note that, notwithstanding our determination that Columbus cannot rely on RSL § 26-513 (a) based only on its leaving the Mitchell-Lama program, it is still entitled to make an application pursuant to that section if it can identify circumstances which indeed are "unique or peculiar" within the meaning of the statute described herein. Further, nothing in this opinion precludes Columbus from asserting in an application pursuant to RSC § 2522.4 (b) and (c) that, if it meets the criteria thereunder, it has suffered a "hardship" entitling it to an increased rent.

■ We reject Columbus's position that DHCR is estopped from taking the position it does on this appeal. First, it is well settled that estoppel cannot serve to bar a governmental agency from exercising its governmental functions (*see Matter of Daleview Nursing Home v Axelrod*, 62 NY2d 30, 33 [1984]). In any event, the 1994 letter from a DHCR official which discusses the

---

**2.** *See e.g. Matter of the Administrative Appeal of Saul Perlstein,* DHCR Docket No. FG 2202278-RO (1992); *Matter of the Administrative Appeal of Wendy Kaufman,* DHCR Docket No. BL 410784-RT (1988).

possibility that a former Mitchell-Lama building *could* argue that the very fact of past regulation constitutes a "unique or peculiar circumstance" for purposes of RSL § 26-513 (a) is inconclusive. That letter expressly recognized the hypothetical and "amorphous" nature of the discussion and stated that it "should not be construed as a[n] official statement of DHCR's position in any particular case." One of the other two letters quoted Halperin's 1994 letter, in which Halperin had emphasized that "[a]n official agency determination cannot be made" under the circumstances. In the absence of proof of any official policy by DHCR, we decline to bind the agency to what can at best be expressed as musings in response to requests for its position on the setting of initial rents. Nor should DHCR be bound by its conduct after the Court of Appeals ruled in *KSLM*. DHCR's action in the wake of that case does not constitute adequate grounds to bind the agency for all future applications.

■ Finally, we find little merit in Columbus's argument that DHCR acted in bad faith by delaying consideration of Columbus's application until after the agency adopted RSC § 2522.3 (f) (4). This argument assumes that the new regulation actually changed the existing law to Columbus's detriment. However, as discussed above, the regulation does not change existing law. Rather, it clarifies that existing law does not provide the relief now urged by Columbus. Accordingly, its retroactive application is not "unexpected and indefensible by reference to the law as it then existed" (*Rogers v Tennessee*, 532 US 451, 464 [2001]; *see also Matter of Partnership 92 LP & Bldg. Mgt. Co., Inc. v State of N.Y. Div. of Hous. & Community Renewal*, 46 AD3d 425, 430 [2007], *affd* 11 NY3d 859 [2008]).

We have considered petitioner's remaining arguments and find them unavailing.

Accordingly, the judgment of the Supreme Court, New York County (Alice Schlesinger, J.), entered December 4, 2009, inter alia, denying those portions of the petition seeking a declaration that Rent Stabilization Code (9 NYCRR) § 2522.3 (f) (4) is invalid or, in the alternative, prohibiting its retroactive application and directing respondent Division of Housing and Community Renewal to process petitioner's applications for adjustment of initial legal regulated rents for the apartments in the subject building pursuant to the Rent Stabilization Code in effect at the time of the filing of the applications, except to the extent of directing DHCR to proceed forthwith to process petitioner's applications, should be affirmed, without costs.

GONZALEZ, P.J., NARDELLI and RICHTER, JJ., concur.

Judgment, Supreme Court, New York County, entered December 4, 2009, affirmed, without costs.