[45 NYS3d 116]

JASON BARTIS et al., on Behalf of Themselves and All Others Similarly Situated, Appellants, v HARBOR TECH, LLC, Respondent.

Second Department, December 28, 2016

APPEARANCES OF COUNSEL

*Jack L. Lester*, New York City, for appellants.

*Wolf Haldenstein Adler Freeman & Herz, LLP*, New York City (*Michael Liskow* and *Alexander H. Schmidt* of counsel), for respondent.

**OPINION OF THE COURT**

DICKERSON, J.

Introduction

Under section 5 (a) (5) of the Emergency Tenant Protection Act of 1974, "housing accommodations" in buildings completed or "substantially rehabilitated as family units" on or after January 1, 1974 are exempt from rent stabilization rules (Emergency Tenant Protection Act of 1974 [ETPA] § 5 [a] [5] [McKinney's Uncons Laws of NY § 8625 (a) (5) (L 1974, ch 576, sec 4, § 5 [a] [5], as amended)]). On this appeal, we determine that housing accommodations in a building that was converted from a completely commercial building to a completely residential building after January 1, 1974, are exempt pursuant to this provision.

Factual and Procedural Background

This putative class action concerns a building complex located at 14 Verona Street, 5 Delevan Street, and 19 Delevan Street in the Red Hook neighborhood of Brooklyn. Between

1924 and 1999, the complex, which consists of several interconnected buildings, was used as a commercial warehouse by the Monarch Luggage Company. The Monarch Luggage Company vacated the premises in August 1999, and on September 19, 1999, the defendant purchased the buildings and the real property.

According to the affidavit of the defendant's manager, Eugene Mendlowits, after the defendant purchased the premises in 1999, the defendant spent approximately $3.5 million "constructing and/or rehabilitating" the complex in order to transform it from commercial to residential use. This work was performed in two phases. During Phase I, which took place between November 1999 and July 2000, the defendant subdivided the previously open floor plan in one wing of the complex in order to create 40 1,000-square-foot commercial loft units. According to Mendlowits, the defendant constructed all of the interior walls that separated the individual units, installed new interior doors and intercoms for each of the 40 units, and installed windows, bathrooms, kitchens, and a refrigerator in each of the units, although stoves were not provided. As part of the Phase I work, the defendant also created brand new plumbing, heating, electrical, ventilation, gas supply, and sprinkler systems. Beginning in July 2000, the defendant began to rent these 40 units out to tenants via commercial leases. Most, if not all, of these units were initially used as artist workplaces.

Meanwhile, in April 2000, the defendant applied to the New York City Planning Commission to rezone the lots on which the complex was located from M1-1, which allows light industrial uses, to R6, which allows residential apartment buildings. On February 20, 2002, the New York City Planning Commission adopted a resolution rezoning the lots on which the complex was located from M1-1 to R6. After the adoption of this resolution, the defendant began to offer residential leases instead of commercial leases to new and renewing tenants.

Between September 2000 and September 2002, the defendant performed Phase II of its construction and rehabilitation of the complex, during which time the defendant built an additional 60 1,000-square-foot loft units in the remainder of the complex in the same manner that it had constructed the initial 40 units. According to Mendlowits, during Phases I and II of the project, the defendant replaced all of the systems in the complex except for the interior stairways and the sewer waste line that led from the complex to the street.

The defendant obtained a temporary certificate of occupancy for 98 dwelling units on January 31, 2005, and a final certificate of occupancy for 100 dwelling units effective December 30, 2005.

### The Complaint

In April 2013, 35 named plaintiffs commenced this putative class action lawsuit against the defendant on behalf of themselves and on behalf of hundreds of similarly situated current and former tenants of the complex. The first cause of action sought a judgment declaring that the plaintiffs' apartments were subject to rent stabilization pursuant to the ETPA and an injunction directing the defendant to revise all leases in accordance with the rent stabilization rules. The second cause of action sought to recover damages for "promissory estoppel," based on allegations that the plaintiffs did not assert their rights under the rent stabilization rules because of the defendant's "promise[s]" to them that the units they rented were not subject to rent regulation. The third cause of action sought to recover damages and equitable relief based upon "illegality" and "mistake of contract" as a result of the fact that the plaintiffs' leases contained "illegal, false and/or mistaken" provisions stating that the plaintiffs' units were not subject to rent regulation. The fourth cause of action alleged that the defendant violated General Business Law § 349 as a result of its conduct in advertising the apartments as unregulated and entering into leases with the plaintiffs that provided that the apartments were not subject to rent regulation. The fifth cause of action alleged that the defendant had breached the implied warranty of habitability by, inter alia, failing to provide basic services including proper heat, mold amelioration, elevator service, water penetration abatement, garbage disposal, plumbing, and ventilation. The sixth cause of action alleged that the defendant violated General Obligations Law article 7 by commingling the plaintiffs' security deposits with its own funds. The seventh cause of action sought to recover attorney's fees, costs, and disbursements.

### The Plaintiffs' Motion

The plaintiffs moved for summary judgment declaring that their apartments are subject to rent stabilization and for class action certification pursuant to CPLR article 9. In support of their motion, the plaintiffs argued that they were entitled to the protection of the rent stabilization rules because the building complex was constructed prior to 1974, was issued a

residential certificate of occupancy, and contained more than six units. The plaintiffs further contended that the complex did not qualify for the substantial rehabilitation exemption provided by EPTA § 5 (a) (5) because 75% of its building-wide and apartment systems had not been replaced as required by Rent Stabilization Code (9 NYCRR) § 2520.11. To demonstrate that the complex had not been substantially renovated within the meaning of Rent Stabilization Code § 2520.11, the plaintiffs relied upon the affidavit of Brenda Bello, a registered architect who inspected the complex in 2013 along with Ari Kamo, a professional engineer. In her affidavit, Bello stated that she and Kamo had concluded, based on their inspection, that only 2 of 17 listed building-wide and individual housing accommodation systems had been rehabilitated or replaced in accordance with relevant building codes. Additional evidence submitted in support of the motion included the temporary certificate of occupancy dated January 31, 2005, and the final certificate of occupancy effective December 30, 2005.

### The Defendant's Opposition and Cross Motion

In addition to opposing the plaintiff's motion, the defendant cross-moved for summary judgment, in effect, declaring that the plaintiffs' apartments are not subject to rent stabilization and for summary judgment dismissing the second through fourth causes of action and so much of the first cause of action as sought injunctive relief. The defendants maintained that the requirement that 75% of building-wide and apartment systems be replaced in order for there to be a finding of substantial rehabilitation was inapplicable where, as here, a building complex was converted from purely commercial space to residential use. The defendants further contended that, in any event, the work performed to convert the complex to residential use satisfied the 75% requirement. In support of its cross motion, the defendant submitted, among other things, the affidavit of its manager Eugene Mendlowits, discussed above. The defendant also submitted two prior determinations of the Deputy Commissioner of the New York State Division of Housing and Community Renewal (hereinafter the DHCR), in which the DHCR found that two other buildings that had been converted from commercial to residential use after January 1, 1974 were exempt from rent stabilization.

### The Plaintiff's Reply and Opposition Papers

In further support of their motion, and in opposition to the defendant's cross motion, the plaintiffs submitted the affidavits

of five of the named plaintiffs, each of whom had initially been provided with a commercial lease at the outset of his or her tenancy. Each of these five plaintiffs maintained that his or her unit had not been upgraded to residential use, noting, among other things, that the same flooring existed from the previously used commercial building, that the only elevator in the building was a freight elevator, and that cooking facilities were not provided to each unit. These five plaintiffs also averred that they had made certain improvements to their units at their own expense. Finally, these five plaintiffs listed various complaints about the habitability of their apartments.

### The Order Appealed from

In an order dated June 16, 2014, the Supreme Court denied the plaintiff's motion and granted the defendant's cross motion. The court found that the defendant had made a prima facie showing that the complex was exempt from rent stabilization by demonstrating that its renovations had converted the complex from commercial to residential use, and that it had paid for a majority of the conversion costs. The court further found that the plaintiffs had failed to raise a triable issue of fact as to whether the complex was subject to rent stabilization. In this regard, the court reasoned that the 75% requirement of Rent Stabilization Code § 2520.11 did not apply where a commercial building was converted to residential use. We affirm.

### Discussion

#### Whether the Apartments are Subject to Rent Stabilization

"The Rent Stabilization Law ([hereinafter] RSL) is a local law which governs rent stabilization in New York City" (*Matter of Gracecor Realty Co. v Hargrove*, 90 NY2d 350, 355 [1997]; *see* Administrative Code of City of NY § 26-501 *et seq.*). It was enacted in 1969

> "in response to a continuing housing shortage as well as the need to regulate buildings previously omitted from rent control laws. The goal of the RSL was to encourage future housing construction by allowing owners to implement reasonable rent increases; to prevent the exaction of 'unjust, unreasonable and oppressive rents'; and to 'forestall profiteering, speculation and other disruptive practices' " (*Roberts v Tishman Speyer Props., L.P.*, 62 AD3d 71, 76 [2009], *affd* 13 NY3d 270 [2009],

quoting Administrative Code of City of NY § 26-501).

"The ETPA was enacted [by the state legislature] in 1974 for the express purpose of bringing within the scope of the RSL those apartments that had become deregulated by virtue of the Vacancy Decontrol Law of 1971 . . . or that had escaped the grip of the Emergency Housing Rent Control Law of 1946 (RCL). It reaffirmed the need for affordable housing in New York City and captured into the RSL apartments which had been, or which otherwise would be, deregulated" (*Columbus 95th St., LLC v New York State Div. of Hous. & Community Renewal*, 81 AD3d 269, 272 [2010] [internal quotation marks omitted]).

"[W]here a locality has declared a housing emergency, the [ETPA] applies to regulate residential rents 'of all housing accommodations which it does not expressly except, including previously unregulated accommodations' " (*Wolinsky v Kee Yip Realty Corp.*, 2 NY3d 487, 491 [2004], quoting *Matter of Salvati v Eimicke*, 72 NY2d 784, 791 [1988]; *see* ETPA §§ 3, 5). New York City invoked the protections of the ETPA by declaring that a housing emergency exists and will continue to exist for all classes of housing accommodations in the City (*see* NY City Council Resolution No. 276 of 1974; *La Guardia v Cavanaugh*, 53 NY2d 67, 76 [1981]).

The RSL and the ETPA authorized the DHCR to promulgate a Rent Stabilization Code consisting of rent stabilization rules that are consistent with the provisions of the RSL and the ETPA (*see* Administrative Code of City of NY § 26-511; ETPA § 10 [b]; *Matter of KSLM-Columbus Apts., Inc. v New York State Div. of Hous. & Community Renewal*, 5 NY3d 303, 310 [2005]; *Columbus 95th St., LLC v New York State Div. of Hous. & Community Renewal*, 81 AD3d at 272).

Section 5 (a) (5) of the ETPA provides that the ETPA does not apply to "housing accommodations in buildings completed or buildings substantially rehabilitated as family units on or after January first, nineteen hundred seventy-four."

"[T]he basic purpose of [this] exemption is to increase the number of habitable family units available to the residents of [the City]. The mechanism by which this is accomplished is to encourage building owners to substantially rehabilitate com-

mercial, or substandard or deteriorated housing stock by permitting them to recoup their expenses free of stabilized rents" (*Matter of Eastern Pork Prods. Co. v New York State Div. of Hous. & Community Renewal*, 187 AD2d 320, 324 [1992]; *see 22 CPS Owner LLC v Carter*, 84 AD3d 456, 457 [2011]).

Section 2520.11 of the Rent Stabilization Code promulgated by the DHCR provides that the Rent Stabilization Code:

"shall apply to all . . . housing accommodations made subject to regulation pursuant to the RSL or any other provision of law, except the following housing accommodations for so long as they maintain the status indicated below: . . .

"(e) housing accommodations in buildings completed or buildings substantially rehabilitated as family units on or after January 1, 1974, except such buildings which are made subject to this Code by provision of the RSL or any other statute that meet the following criteria, which, at the DHCR's discretion, may be effectuated by operational bulletin:

"(1) a specified percentage, not to exceed 75 percent, of listed building-wide and individual housing accommodation systems, must have been replaced;

. . .

"(5) in order for there to be a finding of substantial rehabilitation, all building systems must comply with all applicable building codes and requirements, and the owner must submit copies of the building's certificate of occupancy, if such certificate is required by law, before and after the rehabilitation" (Rent Stabilization Code [9 NYCRR] § 2520.11).

On December 15, 1995, the DHCR promulgated Operational Bulletin 95-2 in order to "clarify the procedures the [DHCR] will use to determine issues of exemption from rent regulation due to substantial rehabilitation" (NY St Div of Hous & Community Renewal Operational Bulletin 95-2 at 1). Operational Bulletin 95-2 provided that the DHCR would find that a building had been substantially rehabilitated within the meaning of the ETPA and the Rent Stabilization Code, and therefore exempt from coverage under the ETPA or the RSL, where the

owner demonstrates, among other things, that "[a]t least 75% of the building-wide and apartment systems contained on the following list must each have been completely replaced with new systems" (*id.* at 2). Operational Bulletin 95-2 then listed the following "[b]uilding-wide and [a]partment [s]ystems":

"1. Plumbing

"2. Heating

"3. Gas supply

"4. Electrical wiring

"5. Intercoms

"6. Windows

"7. Roof

"8. Elevators

"9. Incinerators or waste compactors

"10. Fire escapes

"11. Interior stairways

"12. Kitchens

"13. Bathrooms

"14. Floors

"15. Ceilings and wall surfaces

"16. Pointing or exterior surface repair as needed

"17. All doors and frames including the replacement of non-fire-rated items with fire-rated ones" (*id.*).

However, the Operational Bulletin further provided that

"for good cause shown, on a case-by-case basis, limited exceptions to the stated criteria regarding the extent of the rehabilitation work to be effectuated building-wide or as to individual housing accommodations may be granted where the owner demonstrates that a particular component of the building or system has recently been installed or upgraded so that it is structurally sound and does not require replacement, or that the preservation

of a particular component is desirable or required by law due to its aesthetic or historic merit" (*id.*).

Here, through the affidavit of Mendlowits, the defendant demonstrated that between 1999 and 2002, it spent $3.5 million in order to transform the subject property from a commercial warehouse complex into a residential apartment complex that contained 100 residential units. Based on this conversion of the property from purely commercial space to purely residential space, the defendant made a prima facie showing that the plaintiffs' apartments are exempt from rent stabilization pursuant to section 5 (a) (5) of the ETPA in that they are "housing accommodations in buildings completed or buildings substantially rehabilitated as family units" on or after January 1, 1974 (EPTA § 5 [a] [5]; *see 22 CPS Owner LLC v Carter*, 84 AD3d at 457; *Jordan Mfg. Corp. v Lledos*, 153 Misc 2d 296, 301 [Sup Ct, Kings County 1992]).

The plaintiffs contend that in opposition to the defendant's cross motion, they raised a triable issue of fact as to whether the defendant failed to replace 75% of the systems listed in Operational Bulletin 95-2 in accordance with section 2520.11 (e) (1) of the Rent Stabilization Code promulgated by the DHCR (*see* 9 NYCRR 2520.11 [e] [1]; *Matter of H.M. Vil. Realty v New York State Div. of Hous. & Community Renewal*, 304 AD2d 346, 347 [2003]). We disagree. The most natural reading of the DHCR's 75% requirement is that it is applicable in situations where an owner purports to substantially rehabilitate an existing residential building, and not in situations where a commercial building is converted to residential use. As the defendant argues, a requirement that "a specified percentage . . . of listed building-wide and *individual housing accommodation systems*" be "replaced" (9 NYCRR 2520.11 [e] [1] [emphasis added]) makes little sense where the existing building is a purely commercial building that has no existing "individual housing systems." Where a commercial building is converted to residential use, the "individual housing accommodation systems," as well as many residential-specific building-wide systems, would generally be created, not "replaced." The apparent purpose of the 75% requirement is to ensure that existing residential tenants of an apartment building not lose the benefit of rent stabilization unless the owner of the building truly makes a substantial rehabilitation. This concern is not present where residential units are created where none had existed before. As noted above, one of the purposes of the rent

stabilization laws is to encourage the construction of new residential housing by exempting newly constructed apartment buildings from the rent stabilization rules (*see 22 CPS Owner LLC v Carter*, 84 AD3d at 457; *Roberts v Tishman Speyer Props., L.P.*, 62 AD3d at 76; *Matter of Eastern Pork Prods. Co. v New York State Div. of Hous. & Community Renewal*, 187 AD2d at 324). For the purposes of the rent stabilization laws, the conversion of a commercial building to a residential building is akin to the construction of a new residential building.

Our conclusion that the DHCR's 75% requirement is inapplicable where a building is converted from commercial to residential use is supported by a decision of the Appellate Division, First Department, in *22 CPS Owner LLC v Carter* (84 AD3d 456 [2011]). In that case, the First Department held, without any mention of the 75% requirement, that "the conversion of a purely commercial space into an almost purely residential space, creating 23 residential units when none existed, is a substantial rehabilitation so as to exempt the [subject] building from rent stabilization" (*id.* at 457; *see Jordan Mfg. Corp. v Lledos,* 153 Misc 2d at 301). Moreover, since "an agency's interpretation of its own regulation is entitled to deference" (*Matter of Terrace Ct., LLC v New York State Div. of Hous. & Community Renewal*, 18 NY3d 446, 454 [2012]), it is also significant to note that our conclusion is supported by two prior determinations of the Deputy Commissioner of the DHCR. In those prior determinations, which the defendant submitted in support of its cross motion, the DHCR set aside the determinations of rent administrators and found that two other buildings that had been converted from commercial to residential use after January 1, 1974, were exempt from rent stabilization, without applying the 75% requirement.

The plaintiffs further contend that they raised a triable issue of fact as to whether the subject exemption applies by raising a factual issue as to whether the defendant complied with section 2520.11 (e) (5) of the Rent Stabilization Code. We reject this contention as well. As noted above, section 2520.11 (e) (5) of the Rent Stabilization Code provides, in part, that "in order for there to be a finding of substantial rehabilitation, all building systems must comply with all applicable building codes and requirements" (9 NYCRR 2520.11 [e] [5]). Here, in the final certificate of occupancy, which was issued in December 2005, the New York City Department of Buildings certified that the premises "conform[ ] substantially to the approved

plans and specifications and to the requirements of all applicable laws, rules and regulations for" the use of the complex as an apartment complex with 100 dwelling units. Bello's affidavit, in which she attested to the condition of the premises during her inspection of the premises eight years later, was insufficient to raise a triable issue of fact as to whether all building systems complied with all building codes and requirements at the time of the rehabilitation at issue.

Finally, the plaintiffs contend that they raised a triable issue of fact as to whether the subject exemption applies by raising a factual issue as to whether the tenants were the ones who substantially bore the costs of the subject rehabilitation. In making this argument, the plaintiffs rely on *Wilson v One Ten Duane St. Realty Co.* (123 AD2d 198 [1987]). In that case, the plaintiff tenants asserted that they paid as much as 90% of the total rehabilitation costs of the building at issue. The landlord denied this, claiming that it subsidized more than half of the tenants' costs by charging below-market rent (*see id.* at 201). The First Department found that this raised a triable issue of fact as to whether the ETPA's exemption for housing accommodations in buildings substantially rehabilitated as family units applied, noting that the "implicit purpose of the exemption is to give a landlord the investment incentive of the recoupment of his rehabilitation costs free of a stabilized rent" and that it "would be a ridiculous perversion of the statute to hold that when the costs are substantially borne by the tenants it would qualify the landlord for unregulated rent and leave the tenants defenseless against increased exactions" (*id.*). Here, the defendant presented evidence that it spent $3.5 million in order to convert the subject complex from a commercial warehouse into a residential apartment building with 100 units. While five plaintiffs submitted affidavits stating that they made certain improvements to their units at their own expense, including the addition of cooking facilities such as stoves, these alleged improvements were made after the building had already been converted from a commercial building to a residential building. Notably, while the Administrative Code of the City of New York requires owners of multiple dwelling buildings to provide every kitchen or kitchenette with a sink and gas or electricity for cooking, it does not require such owners to provide stoves or other cooking equipment (*see* Administrative Code of City of NY § 27-2070). Accordingly, contrary to the plaintiffs' contention, they failed to raise a triable issue of

fact as to whether they were the ones who substantially bore the costs of the subject rehabilitation.

For the foregoing reasons, the Supreme Court properly granted the defendant's cross motion for summary judgment, in effect, declaring that the plaintiffs' apartments are not subject to rent stabilization, and for summary judgment dismissing the second through fourth causes of action and so much of the first cause of action as sought injunctive relief. All of these causes of action were based on the premise that the plaintiffs' apartments were subject to rent stabilization. For the same reasons, the Supreme Court properly denied that branch of the plaintiffs' motion which was for summary judgment declaring that their apartments were subject to rent stabilization.

Class Action Certification

Turning now to that branch of the plaintiffs' motion which was for class action certification pursuant to CPLR article 9, CPLR 901 (a) sets forth five prerequisites to class action certification:

> "1. the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

> "2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members;

> "3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;

> "4. the representative parties will fairly and adequately protect the interests of the class; and

> "5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

"These factors are commonly referred to as the requirements of numerosity, commonality, typicality, adequacy of representation and superiority" (*City of New York v Maul*, 14 NY3d 499, 508 [2010]; *see generally* Weinstein-Korn-Miller, NY Civ Prac ¶¶ 901.22, 901.23, 901.24, 901.25, 901.26 [2d ed 2004]). "The class representative 'bears the burden of establishing compliance with the requirements of . . . CPLR 901 . . . , and the

determination is ultimately vested in the sound discretion of the trial court' " (*Cooper v Sleepy's, LLC*, 120 AD3d 742, 743 [2014], quoting *Ackerman v Price Waterhouse*, 252 AD2d 179, 191 [1998]; *see Globe Surgical Supply v GEICO Ins. Co.*, 59 AD3d 129, 136-137 [2008]; Weinstein-Korn-Miller, NY Civ Prac ¶ 901.20 [2d ed 2004]).

Here, the plaintiffs' arguments with respect to commonality and typicality relate solely to their first through fourth causes of action, which are based upon the premise that the plaintiffs' apartments are subject to rent stabilization. As discussed above, the defendant has been awarded summary judgment against the plaintiffs with respect to these causes of action. The only remaining causes of action are the fifth cause of action, which alleges breach of the implied warranty of habitability, the sixth cause of action, which alleges a violation of General Obligations Law article 7, and the seventh cause of action, which seeks to recover attorney's fees, costs, and disbursements. Since the plaintiffs do not argue that there are questions of law or fact common to the class regarding these causes of action that predominate over any questions affecting only individual members, or that their claims with respect to these causes of action are typical of the claims of the class, the Supreme Court providently exercised its discretion in denying that branch of the plaintiffs' motion which was for class action certification pursuant to CPLR article 9.

Conclusion

For the reasons discussed above, the Supreme Court properly denied the plaintiffs' motion for summary judgment declaring that their apartments are subject to rent stabilization and for class action certification pursuant to CPLR article 9, and properly granted the defendant's cross motion for summary judgment, in effect, declaring that the plaintiffs' apartments are not subject to rent stabilization and for summary judgment dismissing the second through fourth causes of action and so much of the first cause of action as sought injunctive relief. Since the action is, in part, a declaratory judgment action, the matter must be remitted to the Supreme Court, Kings County, for the entry of a judgment, inter alia, declaring that the plaintiffs' apartments are not subject to rent stabilization (*see Lanza v Wagner*, 11 NY2d 317, 334 [1962]). Accordingly, the order is affirmed, and the matter is remitted to the Supreme Court, Kings County, for the entry of a judgment, inter alia,

declaring that the plaintiffs' apartments are not subject to rent stabilization.

MASTRO, J.P., CHAMBERS and CONNOLLY, JJ., concur.

Ordered that the order is affirmed, with costs, and the matter is remitted to the Supreme Court, Kings County, for the entry of a judgment, inter alia, declaring that the plaintiffs' apartments are not subject to rent stabilization.